Moody *vs.* Fleming.

---

No. 11.—James Moody, relator, *vs.* William B. Fleming, Judge of the Superior Courts, Eastern District.

[1.] Where a matter lies within the legal discretion of the Circuit Court, this Court will control that discretion; yet only in case of a refusal to exercise, or a flagrant abuse of it.

[2.] Mandamus is not a writ of mere right; but may issue or not, at the discretion of the court, except in case of a clear legal right under the laws of the State, in which case, the law and the right is imperative on the court.

[3.] Mandamus is in the nature of a suit, to which the State is not a party.

[4.) *Adverse* possession for seven years, creates a good title under the statute of limitations.

[5.] Possession under color and claim of title, is *adverse* possession.

[6.] Possession under a grant from the State, is possession under color of title; even when the grant is void for irregularity, if the tenant enters under it *bona fide.*

[7.] The Statutes of Limitation do not run against the State.

[8.] Lands are not subject to survey and to be granted in this State on head rights, unless they are vacant lands.

[9.] Land in possession of a grantee, under a grant from the State, and whose possession has continued for more than seven years, is not vacant land, although the grant be void, because irregularly issued.

This was an application to this court for a mandamus to be directed to his Honor, Judge Fleming; founded on a refusal by him to grant, on the application of the relator, a mandamus, to be directed to the county surveyor of Liberty county, William Hughes, commanding him to certify and send up, as county surveyor, a survey made by his deputy, under a head right warrant, issued in favor of the relator.

The grounds taken in the application to the court below, and the reasons of Judge Fleming for refusing the application, are sufficiently set out in the opinion to the court.

Wм. B. GAULDEN, for the application.

*By the Court.*—NISBET, J. delivering the opinion.

The petition before Judge Fleming for a mandamus against William Hughes, discloses the following facts:

The relator, James Moody, under a warrant from the Land Court of the county of Liberty, caused a certain tract of land, containing some seven hundred acres, to be surveyed by the deputy of the county Surveyor for that county, as vacant land. The survey was returned by the assistant Surveyor to his principal, the county Surveyor, who upon application for that purpose by the relator, refused to certify and transmit the same, as the law directs, to the Surveyor General. William Hughes, the county Surveyor, as the petition states, declining so to certify and send up the survey, *because one Dempsey Griffin was in possession of the land under a grant from the State of Georgia, and had been in possession more than*

Moody *vs.* Fleming.

*seven years from the date of the grant.*   The petition farther states that the grant to Griffin from the State is illegal and void, *because it was issued upon a survey made by the county Surveyor of Tatnall county, upon a warrant which issued from the Land Court of that county.*

Judge Fleming declined issuing the writ, upon the grounds that lands subject to survey and to be granted on head rights, by the laws of the State, must be *vacant land*—that inasmuch as the petition discloses the fact, that the land was in possession of a grantee from the State of Georgia, and had been in his possession for more than seven years ; his title was perfect under the statute of limitations, and that therefore, the land could not be considered vacant land.   Exceptions are taken to this decision, and in support of them, it is argued that the grant from the State was issued illegally ; and that possession under an illegal grant is not such *adverse* possession as will create a title under the statute of limitations.   That the writ of mandamus issues in the name of the State, and the contest for this land, therefore, is between the State of Georgia and a tenant in possession under a void grant, and as the statute does not run against the State, the tenant is not protected by it.   The Judgment of the Court below is affirmed for the following reasons :

[1.]  Whilst this Court has the power to review the Judgment of a Circuit Court on a matter wherein that Court is by law left to a sound legal discretion, yet it will control that discretion only in cases where there is a refusal to exercise, or a flagrant abuse of it.

[2.]  The writ of mandamus is a prerogative writ, and does not issue as *mere* matter of right.

[3.]  We have ruled that it is in the nature of an action when issued, (1 *Kelly,* 273, 274,) yet is grantable within the discretion of the Court.   To say the least of it, it is unquestionably within the discretion of the Court to withhold it in cases where the relator fails to make out a *prima facie* case —*a fortiori*, it is within the discretion of the Court to withhold it in cases where he makes out a *prima facie* case against the right which he sets up.   Such, we think, is the present case. We would, however, not be understood to say that the Courts in this country could refuse this writ when demanded by a person holding a clear legal right under the laws of the State, with no

other remedy to enforce it. In such a case *the law and the right of the citizen* would be imperative upon the Court. The Judge presiding in this case, believed that the relator had not made out a *prima facie* case of right. We think he might have gone farther, and said that the case is *prima facie* against his right. For his petition shows that the land, the survey of which he seeks to have certified, was in the possession of a third person, under a good title, and therefore not *vacant land.* If it was not vacant land he is not entitled to its survey and the certificate of the survey.— *Hotchkiss,* 382, 385, *Sects.* 7 *and* 24. If, indeed, his certificate were had, we do not perceive that it could avail him against a good title in the tenant. This is not therefore a case of flagrant abuse of discretion. I proceed, however, to examine more minutely, the judgment of the court, and the reasoning of counsel against it.

[4.] It assumes that seven years' possession under color of title, in Georgia, is good title. Without now going at large into one of the most doubtful and litigated questions of the science, to wit, what amounts to *adverse possession,* it is sufficient for the requirements of this case, to say, that adverse possession for seven years, is a good title by operation of the statute of limitations.

[5.] And farther, that possession commencing and continuing for that term of years, under *color and claim of title, is adverse* possession, and that whatever else may or may not amount to *color* of title, [6.] a grant from the state is color of title. The tenant in this case, went into possession under the highest evidence of title, the State's grant. And as the primary and absolute dominion over this land was in the State, and as it does not appear that her title had ever passed to any other person, we must conclude that the possession was adversary to all the world. *See Angell on Limitations,* 410 *to* 455. *Tillinghast's Adams,* 46 *to* 50. *Appendix, note A.*

Are there any facts or principles in this case, which prevent the operation of the rule, thus laid down as to possession under color of title? [7.] It is insisted, that here, the State is a party, moving the contest, and setting up a right to have this survey certified, and that the tenant will not be protected by his possession; because the statute of limitations does not run against the State. We have decided, and the decision is sustained by unbroken masses of authority, that the Statutes of limitation do not run against the State. *Brinsfield vs. Carter,* 2 *Kelly,* 150,

Moody *vs.* Fleming.

151.   The answer, however, to this argument, is this.   The State of Georgia is not the real party to the proceeding.   She is not asserting any right, and is not before the Court.   The petition for a mandamus is by a private individual, and it was upon that petition alone, that the decision complained of, was made.— But if the writ had issued, and the writ of error was founded upon alleged errors, in a judgment growing out of the writ and the return, *then* the State would be no party.   The process, it is true, is in the name of the State, but the right asserted is a private right; the issue is between two of the citizens of the State.   I have already stated, that this Court has determined that a proceeding by mandamus, upon the relation of a private person, is in the nature of a suit.   It is in England called a prerogative writ. It is there held the process by which the Crown exerts a high prerogative, through the Courts of Justice.   The prerogative of asserting for the subject a right which could not be otherwise asserted or enforced.   This prerogative here belongs to the people. They exert it through their Courts of Justice by using the name of the State.   And although the writ of mandamus is governed by principles peculiar to itself, yet to all practical intents and purposes, it is a suit.   In this view of the subject, we conclude that the maxim "*nullum tempus occurrit regi*," has no relevancy.

With greater plausibility it is contended that possession originating under a void grant and so continuing, does not create a title under the statute of limitations.   The record does not show that there is any thing upon the face of the grant to Griffin which makes it void, nor does it charge that it was procured to be issued by a fraud to which he was a party.   It is said to have issued illegally in this, that it was issued upon a survey made by the Surveyor of Tatnall county, upon a warrant which proceeded from the Land Court of that county.   The tenant therefore, is taken to have received it and entered on the land under it, *bona fide.*   His possession throughout, is in good faith.   This is a case where there could be no disseisin of any body.   As before suggested, the eminent domain being in the State, and she having parted with it to the tenant and to no one beside, and the possession having continued uninterrupted for seven years, it is hard to conceive how the title can be otherwise than good against the world.   We give no opinion as to how far the rights of the State herself would go to set aside her grant, in a proceeding instituted

by herself for that purpose. It may be, however, well doubted whether she could set aside this grant, and reassert her original property in the land, because of a mere irregularity in the survey.

[8.] We might, I think, rest our opinion upon the undisputed fact, that this land had been appropriated by color of law, and was *not vacant land* in fact. If it was not vacant land, the surveyor had no right to survey it, and being surveyed by his assistant, he was not bound to certify it. Before it could be re-surveyed, would it not be necessary to make it vacant by a revocation of the grant?

[9.] We however meet the question made by the record, and return to the inquiry whether possession under a void grant can ripen into a title. For the purposes of the argument, we assume that the grant is not only voidable but void. It is true that there are highly respectable authorities upon both sides of this question. The weight of authority though, is clearly in favor of the position that it is not necessary, to make the possession adverse, that it should commence under a *rightful* title. The fact of possession and the *quo animo* it was commenced and continued, are the tests. Adverse possession is a question of law, and the *fact* of adverse possession, in its legal sense, is a question for the Jury.— "Disseisin, (says Lord Coke) is where one enters intending to usurp the possession and to oust another of his freehold, and and therefore "*querendum esta judice quo animo hoc fecerit,*" why he entered and intruded." 1 *Inst.* 153. *Blunden and Baugh* 3 *Croke,* 302. The adversary character of the possession is by this authority derived, not from the title under which it is taken, but from the *quo animo.* If there is an intention to assert ownership under the title, the possession is adverse. In *Bradstreet vs. Huntington,* the Supreme Court of the United States, through Mr. Justice Johnson, says, "Rights accruing under acts of limitations are in terms, as *prima facie,* originating in wrong, although really among the best protections of right; and if any one who can commit a disseisin, may claim under an adverse possession, it is not easy to preclude any one. An infant, a feme covert, a joint tenant, a guardian, and even one getting possession by fraud, may be a disseisor." In the same case the Court speak to this point with yet more distinctness, as follows : " As to an entry under a void title, that has met with such pointed answers from this Court and the Courts of New York, that it can scarcely require a labored examination. The bar of the statute is acknowledged to originate

Moody *vs.* Fleming.

in wrong." 5 *Peters,* 438, *a* 446. *See also to the same point, Ewing vs. Burnet,* 8 *Peters,* 41. *Harpending vs. the . Dutch Church,* 16 *Peters,* 455. *Patton's lessee vs. Easton,* 1 *Wheat.* 479.

In *La Frombois vs. Jackson,* this point was made before the Supreme Court of New York, and they say, "that if a party have a deed he need not produce it; and if on the production it proves defective, that does not affect the character of the possession." 8 *Cowen,* 594, 596. The Court of Errors affirm that doctrine. In *Smith vs. Burtis, Spencer, J.* delivering the opinion of the Court, says, "It has never been considered necessary to constitute an adverse possession, that there should be a *rightful* title. Whenever this defence is set up, the idea of right is excluded; the fact of possession, and the *quo animo* it was commenced and continued, are the only tests, and it necessarily must be exclusive of all other rights." 8 *Johns. R.* 180.· See also *Jackson vs. Wheat.* 18 *Johns. R.* 44. *Jackson vs. Newton,* 18 *Johns. R.* 355. *Jackson vs. Woodruff,* 1 *Cowen,* 286. *Hudson vs. Hudson's Adm'r,* 6 *Munf.* 355.

In *Middleton vs. Dupuis,* it is decided, that actual adverse possession for the statutory term, under a *junior grant,* will give the tenant a title to so much of the land as he has in actual possession, even against the person who has a paramount title, and is in the constructive possession of the part in dispute. In this case the possession begins and continues under a grant not void for irregularity or fraud, but impotent; because younger than another conveying the paramount title; and yet the possession gave a perfect title; *Mr. Justice Richardson* remarking that, "the long and open possession of the defendant under an *honest* title, makes the application to this case of the popular mode of statutory conveyancing by possession a happy and satisfactory one." 2 *Nott and McCord,* 311, 312. *Mr. Angell,* in treating of this subject, says, "As to what constitutes color of title, it seems to be very well agreed, that, if the title under which the party relying on possession and claims originally entered, be ever so defective, the possession is notwithstanding adverse." *Angell on Limitations,* 435. See also, 6 *Met. (Mass.) R.* 337. 2 *Met.* 32; 3 *Ibid,* 91. 16 *Serg. and Raw. R.* 214. 4 *Harr. and McHen. R.* 222. 4 *Hay. (Tenn.) R.* 182.

It is held by the Supreme Court of the United States, that a deed fraudulent on the part of the grantor, if accepted *bona fide,*

by the grantee, and without knowledge of the fraud, gives a color of title, under the statute of limitations. 8 *Peters*, 252, 34.

Thus it is manifest that this point is settled by the Supreme Court of the U. States, by the highest Courts of New York, Massachusetts, Pennsylvania, Maryland, and South Carolina, and no doubt, if my time would permit me to verify the fact, by most of the other States, as also, by the recorded opinion of a late and eminent commentator upon the law of limitations. And settled, too, as it seems to me, upon the principles on which statutes of limitation are based. They are statutes of repose, intended to quiet *possession*, and are daily more and more favored by the Courts.

Application refused.

NOTE.—The indisposition of the family of Judge Nisbet rendered it impossible for him to attend during the most of the Term at Savannah.