## TOWN OF DECATUR *v.* DeKALB COUNTY.

130   483<br>f130   585

Construing the act of 1902 (Acts 1902, p. 207), creating the board of commissioners of roads and revenues for the County of DeKalb, in connection with sections 348 and 278 of the Political Code, such commissioners can not lease county property in such manner as to put it out of the power of the county authorities, for ninety-nine years, to devote the property to the exclusive use of the county. Where there is an attempt to dispose of county property in the manner just indicated, and the lessee seeks, under authority of the attempted lease, to use the property in such manner as will be injurious to the freehold, a court of equity will enjoin such use.

Argued November 5, 1907.—Decided April 14, 1908.

Injunction. Before Judge Roan. DeKalb superior court. July 6, 1907.

The County of DeKalb owned a tract of land consisting of two or three acres in the Town of Decatur, which had been beautified by the cultivation of trees and grass, and upon which was the county court-house. It was known as "the court-house square," and was in use by the county as a public square. The city authorities were attempting to appropriate a section of this lot—of surface dimensions 50 feet by 50 feet—for the purpose of locating thereon a water tower, intended to become a part of a public water-works system; and, as a means of connecting pipes from the water tower with pipes in the streets, they intended to have ditches dug through the court-house square, which would tend to injure the shade trees and grass growing thereon. On the petition of the county authorities, the court temporarily enjoined the city authorities from doing these things, and from otherwise interfering with the property of the county. The bill of exceptions complains of that order.

The defendant contended that the use to which it desired to devote the property was a public use, and beneficial and necessary to the county as well as to all other members of the public, and was authorized by a contract entered into by the county authorities on the one hand and the city authorities on the other. It contended that this contract resulted from certain negotiations embodied in writings which were duly entered upon the books of minutes of the board of commissioners of roads and revenues for the County of DeKalb, and likewise upon the minutes of the mayor and council of the Town of Decatur, as follows: (*a*) "State of Georgia, County of DeKalb. The Town of Decatur, acting by and through the mayor and council of the Town of Decatur, respectfully represents to the County of DeKalb, acting by and through the board of commissioners of roads and revenues, as follows: 1st. That the Town of Decatur is about to establish, operate, and maintain a system of public waterworks in and for said town, and for the use and benefit of the citizens thereof. 2d. That it is essential to the successful operation of said system of waterworks that a water-tank and tower or stand-pipe be erected and maintained. 3d. That the most convenient and accessible place for the erection of said water-tank and tower or stand-pipe is on the northwest corner of the public square, or court-house square, the property of the County of DeKalb. 4th. That no less than 50 feet square, and not more than 80 feet square, of said public land will be necessary for the purpose aforesaid. 5th. That to erect, equip, and maintain said structure for the purpose aforesaid will not injure the public property of said county. On the contrary, it will add to its protection, convenience, and value, and lessen the expense of insurance and maintaining the water supply for the use of the said county. 6th. That said Town of Decatur, in view of the facts, requests a lease for the term of 99 years, with the privilege of removing, at the end of said lease or before that time, at its option, all improvements that may be made thereon of that part of the public square aforesaid, not less than 50 feet square and not more than 80 feet square, for the purpose aforesaid; and, for said lease, agrees, during its duration, to furnish said County of DeKalb, for the use of its court-house and jail, so long as both shall remain located at Decatur, and not otherwise, water at as cheap a rate as given to the most favored consumers,

and in addition thereto agrees to pay said County of DeKalb $1 per year for 99 years, as rental for the aforesaid property for the uses aforesaid, and not otherwise. [Signed] Town of Decatur, by John A. Montgomery, Mayor; M. H. George, M. I. Stone, Thos. L. Cooper by M. I. Stone, J. L. Ramspeck, C. B. McGinnis, Polemon L. Weekes, councilmen." (b) "At a regular called meeting of the board of commissioners of roads and revenues of the County of DeKalb, this day held, there came on to be considered the above and foregoing petition of the Town of Decatur for a lease for a term of 99 years of that part of the public square described in said petition, to be used for the purpose therein set out, upon the conditions therein specified. Whereupon it is resolved as follows: (1) That said petition be granted as prayed. (2) That said petition and this order be entered upon the minutes of this board, and that a copy thereof, duly certified, be furnished the Town of Decatur by the clerk of this board. (3) That the acceptance of this proposition in the manner aforesaid operate as a binding contract between the Town of Decatur and the County of DeKalb. This 31st day of December, 1906. No acts of ownership or lease is not to be exercised over the well now in use corner of court-house square without payment of proper compensation as may be agreed on by the constituted authority, and the exact location to begin 6 feet south of the southwest corner of well house now located on lot, thence 50 feet south, thence a depth of 50 feet, making a 50-feet square. [Signed] J. F. McClelland, chairman board of commissioners roads and revenues DeKalb county." (c) An order by the mayor and council of the Town of Decatur, dated January 2, 1907, as follows: "The following petition of the mayor and council and the order of the commissioners of roads and revenues were ordered spread upon the minutes of council, and filed in the office of the clerk of the superior court of DeKalb county, Georgia."

The order of the commissioners was passed at a special meeting at which all members were present, December 31, 1906, the last day of the term of their tenure of office. These commissioners had been selected under the provisions of the act of 1902 (Ga. Laws 1902, p. 207). This act was repealed by the act of 1906, which also made a provision for the selection of one commissioner, and prescribed his powers. Ga. Laws 1906, p. 405. R. J. Freeman was selected as commissioner, under the act of 1906, and, on

June 18, 1907, passed an order, which was entered upon the commissioner's minutes, as follows: "Georgia, DeKalb county. June 18, 1907. It is ordered that a called meeting of the commissioner of roads and revenues of DeKalb county be held for county and other purposes at 8 o'clock, a. m., June 18, 1907. V. S. Morgan, clerk; R. J. Freeman, Com." Then followed on the minutes this entry: "The commissioner of roads and revenues of and for De-Kalb county held a session in pursuance of the above order, and, after considering what purports to be an order and petition on the minute book of the commissioners of roads and revenues for said county, to be found on page 374 and ending on page 376, without admitting or conceding that said order is valid, the same being of date December 31, 1906, the same is hereby revoked. The purported order referred to is in reference to the granting to the Town of Decatur a permit to use, for the purpose of erecting a stand-pipe, water tank, or tower, for the purpose of holding a large water reserve for the use of said Town of Decatur, said permit consisting in allowing said authorities the use of 50 feet square of land on the county property known as the public square, on which is situated the court-house in the Town of Decatur, where the superior court for said county is held; it appearing that erecting of said stand-pipe, etc., would necessitate the digging up and removing of the grass on said ground, and the cutting down and injuring of several beautiful shade trees on same, and render unsightly the present appearance of said property. This June 18, 1907. No further business. R. J. Freeman, Com'r roads and revenues, DeKalb county, Ga. V. S. Morgan, clerk." In the pleadings and the evidence there was no denial of the facts here enumerated. On the hearing the judge passed the following order: "The restraining order heretofore granted by me on June 18, 1907, is, after a full consideration of this case on the law, after argument had, continued in force until the final hearing of the case. The ground upon which I predicate this ruling is, that, in my opinion and judgment, the contract said to have been made, by which the county commissioners leased a part of the court-house square in Decatur, DeKalb county, Ga., to the Town of Decatur, was an illegal contract, and of no binding force upon the county, and the commissioners did not have the power and authority to make such contract in the manner they attempted to make it."

*L. J. Steele* and *J. D. Kilpatrick,* for plaintiff in error.

*Alonzo Field* and *Charles W. Smith,* contra.

ATKINSON, J.  We do not think there was any error in granting this order.  Under the Political Code, §340, a county is a body corporate and may sue and be sued, but its functions are governmental, and it has no power except as conferred by statute.  *Dent* v. *Cook,* 45 *Ga.* 326; *Millwood* v. *DeKalb County,* 106 *Ga.* 745 (32 S. E. 577).  Its affairs are administered by public officers, and they have no powers except such as are conferred by statute. Political Code, §268; *City Council of Augusta* v. *Sweeney,* 44 *Ga.* 463 (9 Am. R. 172) ; *Penitentiary Co.* v. *Gordon,* 85 *Ga.* 159, 171 (11 S. E. 584).  The affairs of the County of DeKalb were administered by commissioners, with powers as prescribed in the act of 1902 (Acts 1902, pp. 207-210), until January 1, 1907, when they were committed to one commissioner, as prescribed in the act of 1906 (Acts 1906, p. 405), which latter act repealed the act of 1902, supra.  Referring to the powers of the commissioners selected under the provisions of the act of 1902 (Acts 1902, pp. 207-210), section 5 of that act provides, that "said commissioners shall have exclusive jurisdiction and control over the following matters, to wit:  In directing and controlling all the property of the county as they may deem expedient, according to law; . . . and to have and to exercise all the powers heretofore vested in the ordinary of said county when sitting for county purposes, and to exercise such other powers as are granted by law or as are indispensable to their jurisdiction over county matters and county finances."  There was nothing else in the act, or in any amendment thereto, tending to confer upon such commissioners power to dispose of or lease county property.  Under the provisions of the act, the commissioners were vested with "all the powers heretofore vested in the ordinary of said county when sitting for county purposes."  This would authorize the disposition of county property to the same extent and in the same manner as the ordinary might formerly have disposed of the same; but aside from this, the commissioners were not given any power of disposition.  Section 348 of the Political Code provides:  "The ordinary has control of all property belonging to the county, and may by order to be entered on their minutes direct the disposal of any real property which can lawfully be disposed of, and appoint a commission to make the

titles thereto, and the conveyance of such commission in accordance with such order vests the grantee or vendee with the title of the county." The ordinary, under this law, was not at liberty to sell any and all county property; he could sell only such as could "lawfully be disposed of." The only provision of law which authorizes the ordinary to sell property of the county is found in section 278 of the Political Code, where it is provided: "When any public prop-. erty shall become unserviceable, it may be sold or otherwise disposed of, by order of the proper authorities, and an entry of the same shall be made in said book, and the money received therefrom shall be paid into the treasury." Under this section of the code, the only property which the ordinary could lawfully sell was property which had become unserviceable. The act creating the board of commissioners of roads and revenues for the County of DeKalb must be construed in connection with the Political Code, §§ 348, 278. It follows that the commissioners, having no greater power than the ordinary, could not sell county property, unless it should have become unserviceable to the county. In the case under consideration, it did not appear that the property was unserviceable. On the contrary, it appeared, from the evidence, that it was in use by the county as part of the public grounds upon which the court-house was located. The point is made, in the brief of counsel for plaintiff in error, that the contract referred to amounted to a mere lease, and not a conveyance of title. It did not purport to convey the fee-simple title, but it was an attempt to make such a "disposition" of county property as to become inconsistent with the county's exclusive use thereof for a period of 99 years, a term much longer than the tenure of office of the officials charged with the administration of the affairs of the county. There was no statute authorizing such a long lease, and no authority to lease for a long term can be implied. The property continues to be public property, and the attempt is to engage the county in a commercial transaction and deprive succeeding county officials of the exclusive use of the property for county purposes for the period of 99 years. It is not within the scope of legislative intent that county officials may so involve the public property. See, in this connection, *Hunnicutt* v. *Atlanta,* 104 *Ga.* 1 (30 S. E. 500); State ex rel. Scott *v.* Hart, 144 Ind. 107 (43 N. E. 7, 33 L. R. A. 118, and note).

*Judgment affirmed. All the Justices concur.*