DYER *et al.,* commissioners, *v.* MARTIN *et al.*

1. The act creating the commissioners of roads and revenues of Hall county (Acts 1886, p. 265) confers upon them power to sell any public property of that county which has become unserviceable, according to the provisions of the Political Code, §§ 278, 348.
2. Public property becomes unserviceable in the purview of Political Code, § 278, so as to empower the proper authority to sell the same, where such property can not be beneficially or advantageously used under all the circumstances.
3. A court of equity will not interfere with the discretionary action of the governing officials of a county within the sphere of their legally delegated powers, unless such action is arbitrary, and amounts to an abuse of discretion.

Argued February 3,—Decided April 16, 1909.

Injunction. Before Judge Kimsey. Hall superior court. November 24, 1908.

*H. H. Dean, F. M. Johnson, W. A. Charters, J. G. Collins,* and *W. B. Sloan,* for plaintiffs in error. *H. H. Perry,* contra.

EVANS, P. J. The County of Hall owns a tract of land which is devoted to the care of the county's poor; and the commissioners of roads and revenues of that county passed an order for the sale of this property at public outcry, after publication of the notice of sale in the newspapers of Gainesville. Pending the publication of the notice three citizens and taxpayers of the county filed their petition praying that the sale be enjoined. The court granted a pendente lite injunction, to which exception is taken.

1. One reason assigned by the petitioners to stop the sale of the pauper-farm is that the commissioners of roads and revenues of Hall county have no authority to pass such an order. The act creating the commissioners of roads and revenues of Hall county (Acts 1886, p. 265) confers upon them exclusive jurisdiction in governing and controlling all county property as they may deem best according to law, of levying county taxes, and in managing other county affairs specifically designated in the act. The sections of the Political Code relating to the sale of real property owned by the county are as follows: "§278. *Unserviceable property sold.* When any public property shall become unserviceable, it may be sold or otherwise disposed of; by order of the proper authority, and an entry of the same shall be made in said book, and the money received therefrom shall be paid into the treasury. §279. *'Proper authority.'* The 'proper authority' referred to in this Chapter is the Governor of the State, for all officers of the State; and the county commissioners, or other officers having charge of county matters, for all officers of the county. §348. *County property, how controlled.* The ordinary has the control of all property belonging to the county, and may, by order to be entered on their minutes, direct the disposal of any real property which can lawfully be disposed of, and appoint a commission to make titles thereto, and the conveyance of such commission in accordance with such order vests the grantee or vendee with the title of the county." The power conferred upon the ordinary by Political Code, §348, to control all property belonging to the county, and to direct the disposal of any real property which can lawfully be disposed of,

does not vest in that official exclusive power of sale of the county's property. The constitutional scheme of county government is that the powers in relation to roads, public buildings, taxes, and other county matters are to be exercised by the ordinary except where the General Assembly confers such powers upon county commissioners of a particular county. Civil Code, §§ 5853, 5879, 5930. When the administration of county offairs in a particular county is lodged with commissioners, the power over county matters usually exercised by the ordinary devolves upon them, and they may discharge such functions with reference to county matters as are conferred on them by the act of their creation, which theretofore have been performed by the ordinary. *Town of Decatur* v. *DeKalb County,* 130 *Ga.* 483 (61 S. E. 23). It follows that under the act of 1886, creating commissioners for Hall county, the power to dispose of the real property belonging to that county is vested in the commissioners of roads and revenues.

2, 3. The complaining taxpayers further contend, even if the commissioners of roads and revenues had authority to dispose of the property of the county, that their power to sell is only where the property has become unserviceable, and that in determining that the property had become unserviceable they had abused their discretion. Petitioners in their sworn petition, which was used as evidence on the hearing, allege, that the pauper farm consists of about 315 acres of land, the larger portion of which is in a high state of cultivation; that the buildings thereon are in a good condition; that the ownership of the farm by the county is necessary for the purposes and requirements of the county; that the county has no other place or farm suitable for the accommodation and keeping of its paupers; that the farm is necessary to the county for the raising of supplies for the convicts of the county, of which the county has a large number at work on the roads, and for the support of its paupers; that it is located at the center of the county, and at the most convenient and accessible point, and has not become in any way unserviceable. At the hearing they supported their contentions by an affidavit signed by several citizens, to the effect that the property is in every way well located and arranged for the purpose for which it is used, and is not unserviceable in any sense, but, on the contrary, is necessary for the comfortable caring for of the county paupers, and that the property

is well adapted for the use of a stockade for keeping the county convicts, and it would be injurious to the interests of the county and unwise to sell the property. The county commissioners in their answer, which was used as evidence on the hearing, averred, that about two years before the passing of the order of sale there had been a popular meeting of the citizens of the county, at which resolutions were adopted requesting that the county pauper farm be moved to some other more suitable and convenient site where the paupers could be cared for at less expense; that thereupon the commissioners investigated the matter of the suitability of the present farm for the use of caring for its poor; that it appears from the records in their office that the cost of maintenance for several years past has been between $1,500 and $2,000 in excess of the revenue derived from the farm, and about a year before the bringing of this petition they had purchased a tract of land containing 100 acres, which they purposed to devote to caring for the county paupers; that the two farms are several miles apart, and can not be used together; that upon the present pauper farm are several cottages that are expensive to keep up, which will soon have to be recovered and repainted; that the wood upon the present farm is about exhausted, and the arrangement of the houses is such as to render it expensive to look after the paupers; that there are now twenty paupers upon the farm; that the farm can be sold for between nine and ten thousand dollars, and the necessary improvements can be erected upon the 100-acre tract at from three to four thousand dollars; that the 100-acre tract is well watered, and has a large supply of wood and timber thereon, and is a much more suitable and convenient place to keep the county's poor than the present pauper farm; and that in the erection of the buildings which they propose to build on the 100-acre tract the expense of maintenance will be considerably reduced. The defendants also introduced an affidavit of four citizens, that in their opinion it would be to the advantage of the county and the taxpayers to sell the pauper farm, and to build one large building on the property owned by the county for the purpose of caring for the inmates of the present county farm; and that it would be much less expensive to the county to maintain the inmates in one large central building than to incur the expense of keeping in repair the numerous buildings now on the county farm. Defendants also intro-

duced a certified copy of the following order: "It appearing to the Board that the County of Hall owns a suitable place for county home other than the one now occupied for said purpose, and it further appearing that the present home can be sold for a good price, it is ordered that the present home and farm be sold to the highest bidder for cash, before the court-house door in the City of Gainesville, Georgia, on Tuesday October 27th, 1908, at 11:00 o'clock. It is further ordered that a notice of said sale be published in the city papers. Order granted this 12th day of October, 1908. [signed] W. N. Dyer, I. F. Duncan, J. D. Whelchel, Commissioners of Roads and Revenues of Hall County."

Before the commissioners can lawfully proceed with the sale of the real estate of the county it must appear that the same has become unserviceable. This word, as used in the Political Code, §278, does not mean that the property proposed to be sold is practically without value, but that it can not be used advantageously by the county. *Regenstein* v. *Atlanta*, 98 *Ga.* 167 (25 S. E. 428). Among the definitions of the word "serviceable," given in Webster's International Dictionary, are "beneficial; advantageous." A county may own two tracts of land suitable or beneficial for the same purpose, and yet may not be able to devote both properties to beneficial use. One tract may be sufficient to answer the county's needs, and the other would not be needful or serviceable to the county. In such a case it would be the part of wisdom for the county commissioners charged with the administration of the county affairs to investigate and determine which tract of land was not needed, or was unserviceable to the county. Under the code section above cited it would be within the power of the proper officials of the county to order the sale of the least desirable piece of the property, considering the uses to which it was intended to be put. In the present case it appears that the county owns two tracts of land, upon one of which the county poor are maintained. So far as the record discloses, the other tract is not put to any county use. In the administration of the county affairs the commissioners have determined that one of these tracts is unserviceable, and that it is to the best interests of the county, a saving to the taxpayers, and a convenience to the paupers who partake of the county's liberality, that the home for the paupers be located on the 100-acre tract, and the larger tract be sold. This was clearly with-

in the discretionary powers of these administrative officers; and unless their discretion has been abused, the courts have no revisory power. As was said in *Commissioners* v. *Porter Mfg. Co.*, 103 *Ga.* 617 (30 S. E. 549) : "The discretion vested in the county authorities must be from the nature of the case a broad ·one, and therefore the reviewing power of the judge of the superior court must be exercised with caution, and no interference had unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law." See also *Anderson* v. *Newton*, 123 *Ga.* 512 (51 S. E. 508) ; *Gaines* v. *Dyer*, 128 *Ga.* 590 (58 S. E. 175). When the commissioners ordered the sale of the pauper farm they exercised an administrative act; and the courts have no authority to inquire into the expediency of their action, unless it is made to appear that they either exceeded their powers under the law, or in the exercise of that power there was a manifest abuse of discretion. When their action within the .scope of the powers conferred on them by law is sought to be restrained by a complaining taxpayer, the question is, not whether the court or other taxpayers may have honestly differed with the commissioners as to the wisdom of their course, but whether that course of action is so palpably against the best interests of the county as to amount to an abuse of their discretion. We are aware that a judge of the superior court in passing upon an application for interlocutory injunction is also vested with a discretion, and· this court has repeatedly held that his discretion upon the facts will not be disturbed unless it is abused. But it must also be borne in mind that a court of equity will not interfere with the administrative action of the governing officials of a county within the scope of the powers delegated to them by the law, unless the act complained of is arbitrary, and amounts to an abuse of discretion. An examination of the evidence presented to the judge of the superior court shows that there is a difference of opinion among the citizens of the county as to whether the pauper farm should be retained at its present location, or established upon the 100-acre tract. Looking at the reasons advanced for the different conclusions in a calm and dispassionate way, we can see how the commissioners might incline to one or the other proposition. They were called upon under the circumstances to act, and we can see nothing in the evi-

dence submitted to the chancellor which would justify him in holding that they were guilty of an abuse of discretion.

*Judgment reversed.    All the Justices concur.*