VAN VALKENBURG *et al. v.* STONE, commissioner, *et al.*

No. 7994.   APRIL 20, 1931.

*Thomas G. Lewis* and *Neufville & Neufville,* for plaintiffs.

*Fred Morris* and *Roberts & Vandiviere,* for defendants.

RUSSELL, C. J. (After stating the foregoing facts.) As said in *Dyer* v. *Martin,* 132 *Ga.* 445, 447 (64 S. E. 475): "The constitutional scheme of county government is that the powers in relation to roads, public buildings, taxes, and other county matters are to be exercised by the ordinary, except where the General Assembly confers such powers upon county commissioners of a particular county." As appears from the record, J. M. Stone as commissioner supersedes the ordinary in Cobb County. When the administration of county affairs in Cobb County devolved upon this commissioner, the power over the roads usually exercised by an ordinary under the provisions of the code was lodged in him, and he could discharge all functions with reference to county matters generally, and the roads in particular, which had been conferred upon him by the act creating the office of commissioner and which had theretofore been performed by the ordinary. *Town of Decatur* v. *DeKalb County,* 130 *Ga.* 483 (61 S. E. 23). Since the passage of the act of 1850, which in the creation of the office of ordinary transferred to its jurisdiction powers of the justices of the inferior court, it may be said that the administration of all four different systems of road-working has been lodged in our ordinaries until the enactment of the law allowing any county which may so desire to substitute commissioners of roads and revenues. We do not overlook the fact that in a few counties the county matters are in charge of county judges, but this fact is immaterial at the present time. There can be no question of the fact that the defendant as commissioner

of Cobb County has the right and duty to enforce the working and repair of all the public roads in his county, in accordance with the law applicable within his jurisdiction. The General Assembly, recognizing that there were or might be instances in which the county authorities might not perform the duties imposed upon them by law, enacted section 5441 of the Code of 1910, which gives to any citizen of a county the right of applying to the superior court for the writ of mandamus to compel the ordinary or county commissioners, as the case may be, to repair and keep in condition any·of the county roads. That section as it is incorporated in the Code of 1910, adopted by the General Assembly, did not in its original form refer at all to the subject of roads. Section 4868 of the Code of 1895, which had been brought forward from our previous codes, consisted of only five lines: "Mandamus does not lie as a private remedy between individuals to enforce private rights, nor to a public officer who has an absolute discretion to act or not, unless there is gross abuse of such discretion; but it is not confined to the enforcement of mere ministerial duties."

However, in 1903 the General Assembly amended this section so as to make it particularly applicable to roads (Ga. L. 1903, pp. 41-43), by adding all of the section in its present form which comes after the word "duties" in the original section as quoted. The proviso added is: "provided, however, that on the application of one or more citizens of any county of this State against the county commissioners of roads and revenues of such counties where by law supervision and jurisdiction is vested in such board of commissioners of roads and revenues over the public roads of such counties, and the overseers of the public roads complained of, or the ordinaries of such counties where by law supervision, control, and jurisdiction over such public roads is vested in the ordinaries and the overseers of the public roads that may be complained of, either, both, or all of said named parties, as the facts and methods of working the public roads in the respective counties may justify, which application or petition for mandamus shall show that one or more of the public roads of such county of such petitioner's residence are out of repair, and do not measure up to the standards and do not conform to the legal requirements as prescribed by sections 512, 513, and 533 of volume 1 of the Code of 1895 [sections 632, 633 and 654 Code of 1910] of Georgia, and are in such condition

that ordinary loads, with ordinary ease, can not be hauled over such public roads, the judges of the superior courts of this State are hereby authorized and given jurisdiction, and it is hereby made their duty, upon such showing being made, to issue the writ of mandamus against such parties having charge of and supervision over the public roads of such county, and to compel by such proceedings the building, repairing, and working of such public roads as are complained of, up to that standard now required by existing laws of this State as embodied in sections 512, 513, and 533 of volume 1 of the Code of 1895 [sections 632, 633, and 654 Code of 1910], and so that ordinary loads, with ordinary ease and facility, can be continuously hauled over such public roads; and the judges of the superior courts shall, by proper order, in the same proceedings compel the work done necessary to build, repair, and maintain such public roads up to the standard so prescribed." However, the adoption of the amendment of 1903 did not in any way affect the general law of mandamus or the rules of practice and procedure as to this remedy previously existing. Nor did it affect the general rules upon the subject which had been announced by this court. One of the best known of these rules is that the grant of a mandamus lies largely in the discretion of the presiding judge.

In *Savannah &c. Canal Co.* v. *Shuman,* 91 *Ga.* 400, 402 (17 S. E. 937, 44 Am. St. R. 43), Mr. Justice Lumpkin said: "The granting or refusing of injunctions has always been regarded as discretionary, and it seems quite clear that in cases of mandamus it lies very largely within the discretion of the presiding judge as to whether or not the writ will, in a given case, be made absolute; and in order to reverse a judgment in a case of this kind, it would be necessary to show that the discretion of the court was abused." In the very early case of *Moody* v. *Fleming,* 4 *Ga.* 115 (48 Am. D. 210), this court ruled that except in a case of clear legal right the writ of mandamus was a discretionary remedy. That the issuance of an interlocutory injunction upon conflicting evidence is discretionary, and that the judgment of the lower court will not be reversed unless the discretion of the lower court has been manifestly abused, is a rule so frequently applied as to become practically axiomatic. And yet it seems that this rule as to injunctions was first applied as to mandamus, since in one of the earliest cases, *Harwell* v. *Armstrong,* 11 *Ga.* 328, the decision in *Moody* v.

*Fleming,* supra, which was a case of mandamus, was used as the basis of the decision delivered by Judge Warner, who delivered the opinion of the court. In the *Harwell* case he said that "the court below allowed the defendant, Armstrong, to file his answer under the circumstances stated in the record; refusing to permit the complainants to take their bill *pro confesso;* and the question is, whether this court will control the discretion of that court, under this statement of facts?" He then cited the ruling in *Moody* v. *Fleming,* supra, that this court would control the discretion of the court below "only in cases where there is a refusal to exercise it or a *flagrant abuse* of it." As said by Mr. Justice Lumpkin in the *Savannah Canal* case, supra (a mandamus proceeding against the Savannah Canal Company), this court, by citing the case of *Moody* v. *Fleming,* supra, "evidently intended to put cases of mandamus and injunction upon the same footing as to the question of discretion." If, as held in *Savannah Canal Co.* v. *Shuman,* injunction and mandamus are upon the same footing, then there seems to be no question about the proper rule to be applied by this court in reviewing the judgment of the judge of the superior court in the exercise of his discretion in a case such as this, where the judge of the superior court, on an application for mandamus, was himself reviewing a matter in which the county authorities are themselves vested with a very wide discretion; and the reviewing power of judges of the superior court should be exercised with caution, and the discretion of the county authorities should not be controlled or disturbed unless it is clear and manifest that the discretion vested in them has been exercised arbitrarily and their discretion abused. Upon a review of the record in this case, we can not say that there was a flagrant abuse of discretion, either of the commissioner in the first instance, or the judge of the superior court upon review.

As has been heretofore remarked by this court, it is an impossibility for county authorities at times to keep or repair all of the public roads of a county at once. *Commissioners* v. *McMath,* 138 *Ga.* 351 (75 S. E. 317). There is no allegation in the petition that the building of the new road referred to, or the change of the road which has been suggested by the petitioners, has not been authorized in manner prescribed by law; and since pleadings are to be most strongly construed against the pleader, it must be inferred

that appropriate steps have been taken pursuant to law to authorize the new road or the relocation of some portion of the old Pace's Ferry road. If the acts alleged to have been done by the county commissioner are in violation of a previous injunction referred to in the petition, a petition setting forth the violation of the injunction and asking for an attachment for contempt might be an appropriate remedy; but we do not think mandamus can be used as a means of enforcing an injunction. The function of injunction is to prevent action, and not to compel the defendant in such case to do anything. The provision as to the issuance of a mandamus nisi and the grant of a mandamus absolute, as contained in § 5441 supra, is for the purpose of compelling county authorities to put such county roads in the county of the petitioner's residence as are "out of repair and do not measure up to the standards, and do not conform to the legal requirements as prescribed by sections 632, 633, and 654," and to compel that such roads be put in condition "so that ordinary loads, with ordinary ease and facility, can be continuously hauled over such public roads." We can not say that the allegations of the petition required the judge to find that the road in question was in such condition that ordinary loads, with ordinary ease and facility, could not be hauled over it. The petition seems rather to institute comparison between the portion of the road of which complaint is made with other sections of road, or of the same road in the same vicinity, than to definitely state facts showing "that ordinary loads, with ordinary ease and facility," can not be hauled over the road complained of. In the amendment to the petition, which incorporates § 5441 and reference is thus made to the requirements of §§ 632, 633, and 654, it is not alleged that these requirements have not been complied with; and from this, under a proper construction of the pleadings, the inference must be drawn that they have been complied with. § 632 requires that second-class roads "shall be cleared of all stumps, trees, grubs, and bushes, at least twenty feet, and of such limbs of trees as may inconvenience horsemen or carriages; the stumps to be cut as nearly even with the surface as possible, and the carriage-track must be at least five feet and six inches wide; said road shall be managed according to the road laws of this State, so far as the same may be applicable." Practically the same requirements are stated in § 633 with reference to third-class roads, except that the clearing

need only be for sixteen feet, though the carriage track is still five feet and six inches.

Since there is no statement in the petition other than that referring to §§ 632, 633, and 654, it must be assumed that the road in question is not a first-class road, which is required by the terms of § 630 to be "at least thirty feet wide." § 654 provides: "The county authorities of the several counties, having charge of the roads and revenues of each of said counties, are authorized and required to provide for the grading of the public roads of their respective counties, where said roads are too steep, too rough, or too boggy for practical use or the hauling of ordinary loads; and said officials are authorized and required to provide for any other extraordinary work on the public roads of their respective counties which can not be done by the road hands subject to road duty under the laws of this State." This section is followed by § 655, which seems in part to negative the provisions of § 654. However, this is immaterial, because we merely referred to the code sections to which reference is made in § 5441, in illustration of the statement previously made, that apparently the quotation of § 5441, without the presentation of such facts as would show that the road will not continuously carry ordinary loads, with ordinary ease, would not protect the petition from the attack directed against it by demurrer. The amendment to the petition concludes as follows: "Petitioners allege on information and belief that unless work of a permanent character is done upon said road and it remains neglected, as heretofore alleged, that the same *will become* impassable and that ordinary loads with ordinary ease and facility can not be continuously hauled over said section of road." From the statement that the road *"will become* impassable, and that in consequence ordinary loads with ordinary ease and facility can not be continuously hauled over said section of road," the judge of the superior court, construing the petition against the pleaders, was authorized and required to conclude that the road had not become impassable, and that at the time of the action ordinary loads with ordinary ease and facility could be continuously hauled over the road. An application for mandamus to require the county authority to do certain specified things is subject to demurrer upon the ground that it fails to set forth a cause of action, when the allegation is that the road *will become* impassable and *will not* con-

form to the requirements as to the duty of the county authority as to upkeep of said road. This is not a statement that the road in question is in such a condition that an ordinary load, with ordinary care, can not be hauled over such public road, but a mere conclusion based upon the probability or possibility that the road *will* get in such condition. We have already referred to the fact that there is no definite statement that the road has not been cleared of all stumps, trees, grubs, and bushes, etc., as required, or that there is not a carriage track at least five feet and six inches wide. There is no statement that the stretch of road now under consideration should be graded because it is "too steep, or too rough, or too boggy for practical use or the hauling of ordinary loads." Nor is there any allegation of extraordinary work which it is alleged should be done which "can not be done by the road hands subject to road duty under the laws of this State." As to the discretion lodged in county authorities, and also especially as to roads, and other instances, see: *Terry* v. *Wade,* 149 *Ga.* 580 (101 S. E. 539) ; *Jackson* v. *Highway Board,* 164 *Ga.* 434 (138 S. E. 847) ; *Murph* v. *Macon County,* 167 *Ga.* 859 (146 S. E. 845) ; *Dyer* v. *Martin,* 132 *Ga.* 445 (supra) ; *Dunn* v. *Beck,* 144 *Ga.* 148 (86 S. E. 385) ; *Harrell* v. *Smith,* 149 *Ga.* 584 (101 S. E. 771) ; *Raines* v. *Terrell County,* 169 *Ga.* 725 (151 S. E. 509).

After full consideration of the road laws of this State and application of the allegations of the petition to these laws, and considering the broad latitude of discretion with which the county commissioner is clothed, we hold that the judge of the superior court did not err in sustaining the demurrer and dismissing the petition.        *Judgment affirmed.    All the Justices concur.*