792

MARKS *et al. v.* STATE HIGHWAY DEPARTMENT *et al.;*
*et vice versa.*

Nos. 6673, 6703. JANUARY 19, 1929. REHEARING DENIED FEBRUARY 18, 1929.

*Hamilton Phinizy,* for plaintiffs.

*Pierce Brothers, W. W. Abbot Jr., S. M. Smith,* for defendants.

PER CURIAM. The exceptions in this case are to parts of the judgment rendered on the application for an interlocutory injunction. The exceptions here presented arise out of the same case as those decided in *State Highway Department* v. *Marks,* 167 *Ga.* 397 (145 S. E. 866). The decision then rendered, as to the issues raised, is the law of the case, and the issues are there stated.

1. Marks et al. complain that the court erred in refusing to enjoin the "relocation" of the road between Augusta and Waynesboro, and thereby substituting what is called the "Peach Orchard Route" for the "McBean Route." The act of 1921 (Ga. L. 1921, p. 199) provides "that the said Highway Department in taking over said roads is not bound to the right of way of the road-beds as located on January 1, 1922, but shall have the right to resurvey and relocate said road-bed and right of way, and it shall be the duty of the county or counties in which resurveys and relocations are made to furnish the right of way or the relocation and resurvey free of charge to the said Highway Department. Provided, that in relocating any road or right of way the State Highway Department shall confer with the ordinary or county commissioners, as the case may be, and give due consideration to their wishes; but in case of disagreement, the judgment of the State Highway Board shall prevail." To relocate is the same thing as to locate anew. The power to relocate the road-bed of an existing road does not include the power of establishing a new road, and of abandoning entirely the existing road. The power to resurvey and relocate the road-bed

and right of way of an old road does not confer the power to lay out an entirely new road. "The authority to relocate anew includes the authority to make some departure from the old or existing" road. Cambridge v. Middlesex County, 167 Mass. 137 (44 N. E. 1089). The word "relocate," without addition or qualification, means to locate again, and implies a preservation of the identity of the way without material change. Relocating is not intended to be used as a method of making important changes in a way. 29 C. J. 517, § 225, 2, note 96. The above power granted to the State Highway Department to resurvey and relocate the road-bed and right of way of a road taken over by it, does not give to that body the authority to wholly abandon the road taken over, and to build an entirely new road. The power of relocation of a road does not confer the power of its abolition. The evidence demands a finding that the State Highway Department proposed to build a new interconnecting county-site road 25 or 30 miles in length, and to abandon the existing interconnecting county-site road which they had previously designated as such and had taken over its construction and maintenance for a number of years. This they can not do, especially under the provisions of the highway act, which requires them first to designate and take over the maintenance of only interconnecting county-site roads before building other roads. The question whether the State Highway Board could erect a new road as a post-road is not involved, for the reason that they are undertaking to abandon the existing interconnecting county-site road between Augusta and Waynesboro, and to substitute in its place a new interconnecting county-site road.

2. The questions raised in the cross-bill of exceptions are controlled by the ruling in the case of the *State Highway Department of Georgia* v. *Marks,* supra.

3. The court erred in not enjoining the State Highway Department as prayed.

*Judgment reversed on main bill of exceptions; affirmed on cross-bill. All the Justices concur, except Beck, P. J., and Atkinson, J.*

ATKINSON, J., dissenting. The decision by the majority in *State Highway Department* v. *Marks,* supra, is controlling, but the reasons stated in the dissenting opinion in that case apply in this case to the questions here involved, in so far as they were involved and decided in that case. That case did not involve authority of

the State Highway Department to designate and construct, as a part of the system of State-aid roads, the road called the "Peach Orchard Route" in lieu of the road called the "McBean Route," as dealt with in the decision by the majority in the present case. It is impossible to concur in the decision of the majority relating to these roads.

Was it within the authority of the State Highway Department and its officials, with the aid of the Federal Government, to establish and construct the road called "Peach Orchard Route" connecting the two county-seats in question as a part of the system of State-aid roads and to be designated as a section of Route 21 of that system? This road was so designated and constructed, and, being a road connecting two county-seats, is so located as that it can properly be classed as a link in the system of State-aid roads. The plaintiffs contend that there was no authority to establish and construct it, because the State Highway Department in 1921 established the "McBean Route" as a part of said system, being a different road between the two county-seats in question, which was separate and distinct from and several miles east of the said Peach Orchard Route, except at the termini of the two roads, and after the establishment of the McBean Route the said State Highway Department improved a large portion of such route located within the County of Richmond with Federal and State-aid road funds and has continuously maintained said McBean Route as a part of the system of State-aid roads; that by their said conduct the State Highway Department exhausted its authority in relation to the establishment of a road between the two county-seats in question as a link in the system of State-aid roads, and consequently had no power to substitute the road called the Peach Orchard Route for the road called the McBean Route; and that the officers of the Highway Department in attempting to make the substitution were acting without authority, and consequently were individually about to commit a wrong irreparably injuring the plaintiffs. This entire complaint goes back to the question of authority of the State Highway Department; because if that body had authority under the law to do the things complained of, the action of the officers would not be wrongful or unofficial. Section 1 of article 4 of the act of 1919 (Acts 1919, p. 242) creates an entire system of State-aid roads for the State as a whole. The roads to be included in the system would

not embrace all the public roads in the State, but only such roads as "shall be designated" by the State Highway Department to become a part of such system. Section 1 of article 5 of said act confers power upon the State Highway Department expressly "to designate" the system of State-aid roads, and provides "that no road shall become a part of said system until the same shall be so designated by the State Highway Board by written notice to the county road authorities concerned." The authority to "designate" the roads to become parts of the system of State-aid roads as distinguished from other roads under the control of the State Highway Department, as heretofore pointed out, is confined (a) to two roads starting from the county-seat of each county and traversing the county to the county line, where they shall connect with "designated" State-aid roads of the adjoining counties (provision 1 of section 2 of article 5 of the act of 1919, supra) ; (b) to "additional main traffic roads" which are necessary to complete said interconnecting system, where unusual topographic conditions are met with, or to serve important market points where the county-seat to county-seat routes involve substantial loss of distance (provision 2 of section 2 of article 5 of the act of 1919, supra) ; (c) to roads so located as just stated and built by counties under supervision of the State Highway Department under the provisions of article 6 of said act hereinabove quoted. One definition of the word "designate" is: "to mark out and make known; to point out; to name; indicate; show; to distinguish by marks or description; to specify; as, to *designate* the boundaries of a country;" etc. Webster's International Dictionary.

In section 1 of. article 5 of the act of 1919, referring to the powers and duties of the State Highway Department, authority is conferred upon that body "to provide for surveys, maps, specifications, and other things necessary in designating  .  .  State-aid roads." In provision 3 of section 2 it is declared: "In designating and locating the entire system of State-aid roads, the effort shall be made to serve as large a territory and as many market points as practicable with the said system, due consideration being given to topographic and construction difficulties, and to secure main trunk line routes through the State." In provision 4 of section 2 it is declared that "The State Highway Engineer shall prepare a report or reports, accompanied by maps, setting forth the general

routes between county-seats of roads recommended for designation as State-aid roads, for approval by the State Highway Board," and that, "when duly approved by said board, the said maps shall be filed with the Secretary of State as the authoritative record of such designated State-aid roads, and copies shall be furnished to the counties concerned." In provision 5 of section 2 it is declared: "That when any portion of the designated State-aid road system is taken under the jurisdiction of the State Highway Department by written notice as prescribed in article 5, section 1, hereof, the county or counties in which said portion is located shall not thereafter be required to levy taxes for the construction or maintenance of said portion," etc. In section 6 of article 5 it is declared: "That the respective county road authorities shall furnish free to the State Highway Board all necessary rights of way for the *designated* roads in each county, constituting any portion of the system of State-aid roads." It is declared in article 6 of said act that each and every county which has heretofore built or which shall hereafter build any portion of the roads within such counties, "designated by said board as a portion of said system of State-aid roads, with funds secured from the issuance of county bonds or otherwise, under approved plans, specifications, and supervision of the State Highway Department, shall be reimbursed in whole for the cost of said roads; provided, that before any portion of said State-aid road system shall be constructed by any county, *projects therefor* shall be approved in advance by said State Highway Board by formal action entered upon the minutes, specifically setting forth the agreements; and provided further, that thereafter said roads as so constructed *shall constitute a part* of the system of State-aid roads and be maintained by said Highway Board as herein provided for; and also provided, that no county so constructing any portion of said system of State-aid roads shall be repaid any portion of the cost thereof until after the entire system of interconnecting county-seat to county-seat highways shall be completed."

Omitting reference to mileage in the system of State-aid roads, provision 3 of section 2 of article 5 of the act of 1919, as amended by the act of 1921 (Acts 1921, p. 199), declares as follows: "In designating and locating the entire system of State-aid roads, the effort shall be made to serve as large a territory and as many market points as practicable with the said system, due consideration be-

ing given to topographic and reconstruction difficulties, and to secure main trunk-line routes through the State; . . Provided, that the State Highway Department shall *take over the State-aid roads* as above mentioned on or before January 1, 1922; and provided further that when the various counties have complied with the law with reference to right of way, and provided further that the said Highway Department in taking over said roads is not bound to the right of way of the road-beds as located on January 1, 1922, but shall have the right to resurvey and relocate said road-bed and right of way, and it shall be the duty of the county or counties in which resurveys and relocations are made to furnish the right of way or the relocation and resurvey free of charge to the said Highway Department. Provided, that in relocating any road or right of way the State Highway Department shall confer with the ordinary or county commissioners, as the case may be, and give due consideration to their wishes; but in case of disagreement, the judgment of the State Highway Board shall prevail." In section 8 of the act of 1921 it is declared that "this act is not to become a law until January 1, 1922."

It will be perceived from the foregoing that the duty to "take over" roads under section 2 of the act of 1921 on January 1st, 1922 (the date prescribed for the law to become effective), relates only to "State-aid roads." This was not authority to "take over" any road that had not become "designated" by the State Highway Department as a part of the system of State-aid roads. It was expressly declared that "no road shall become a part of said system until the same shall be so *designated* by the State Highway Board by written notice to the county road authorities concerned." This means officially "designated" by the State Highway Department by written notice to the county road authorities. How may a road be officially "designated" under the law? Roads that can be *designated* are classified as to location, and are to be located as parts of an entire system of roads traversing the State as a whole for the purpose of accommodating through traffic as well as local traffic, and having in view "topographic and construction difficulties" that would naturally be encountered. Authority was particularly given to the State Highway Department to provide for surveys, maps, specifications, and other things "necessary in designating" roads to become part of the system. Important consequences follow the

action of the State Highway Department from the act of "designating" roads to become parts of the system of State-aid roads. These are evident when the extent and complex character of the entire system is taken under consideration. Construing the foregoing provisions of the statutes together, they contemplate and require, in order to "designate" a road, (1) definite, official action of the State Highway Department declaring the particular road as a part of the system of State-aid roads; (2) description of the road sufficiently definite to afford means of identifying its actual location; (3) the giving of notice of the action of the State Highway Department to the counties in which the road is located. Applying this test, the evidence was insufficient to show that "McBean Route" was ever designated as a part of the system of State-aid roads, and consequently it did not become a part of that system by the so-called "taking over" of that road by the State Highway Department. The uncontradicted evidence showed that the only formal action by the State Highway Department relating to a road between the two county-seats in question was based upon a map prepared by the engineer of the State Highway Department, which merely represented a road between the two county-seats, without specifying any intermediate points or showing actual location of any particular road; also that no surveys were made; and that the reason for omission to specify any particular location for a road between the two county-seats was because it was not known what particular location the State Highway Department would determine to select. No formal notice was given to the counties concerned, except to forward them copies of the above-mentioned map, which, not representing actual location of a road, would give them no record of a road in fact or furnish them with information by which they could supply right of way in compliance with their statutory duty. There was too much uncertainty in all this to amount to official "designation" within the meaning of the statute.

The judgment of the trial court did not expressly rule upon the demurrer or the plea to the jurisdiction, though they were considered with all the evidence and the pleadings at the interlocutory hearing for injunction. It was not erroneous to refuse an injunction as relating to establishment and construction of the road called Peach Orchard Route as a part of the system of State-aid roads. Mr. Justice Beck concurs in the foregoing dissent.

ON MOTION FOR REHEARING

HINES, J. In one of the grounds of the motion for rehearing it is insisted that we overlooked the decision in *Jackson* v. *State Highway Department,* 164 *Ga.* 434 (138 S. E. 847). In that case the authority of the State Highway Board to relocate a State-aid road connecting two county-sites was not involved or decided. The petition in that case did not allege that the road from Greensboro to Sparta had been designated as a State-aid road and notice thereof given to the County of Greene, as required by the act of 1919. The petition alleged that before Route 15 was undertaken by the State Highway Department, there existed, and still exists, a much traveled road between Greensboro and Sparta, being the original county-site road of said county, and that it was being used as such, maintained, topsoiled, and worked by said department. This was the only allegation in that case which squinted at the fact that the old road between Greensboro and Sparta, which the petition alleged had been in use for 100 years, had been designated and taken over by the State Highway Department as the interconnecting county-seat road between these two cities. The petition did not allege that the State Highway Department was abandoning or changing a State-aid road which it had designated and over which it had taken jurisdiction. It only alleged that the State Highway Department proposed to abandon this original route from Greensboro to Sparta, and to substitute therefor a new road between said towns. It further alleged that at one time the State Highway Department and the county authorities decided to use the original route between these towns, but now proposed to go said other route. It further alleged that petitioners were unable to know which route would be adopted, having been misled by promises from said authorities in charge that said original route would be finally adopted and used as a link of State Route 15. The petition did not deny the authority of the Highway Department to locate Route 15. Paragraph 21 of the petition in that case was as follows: "Petitioners allege the adoption of said Siloam White Plains route, with the attendant extra and additional cost it entails, and the longer distance of travel, and the inconvenience and extra cost of travel over the said Eatonton and Milledgeville roads to and from all points within this section and territory, and other facts herein alleged, not only amount to abuse of any discretion vested in said State and

county boards to designate said road, but the same is contrary to the proviso of the State-aid road laws of Georgia, that due consideration shall be given in designating such roads to topographic and construction difficulties, and that the total mileage of such roads shall be limited, which said provisions have not been complied with in making said designation, and therefore reviewable by the courts."

Paragraph 22 was as follows: "Petitioners show that both Siloam and White Plains are incorporated towns in Greene County, and it is illegal to use State-aid road funds or State money to build roads through said incorporated towns, which is attempted to be done on said Siloam White Plains route; and petitioners allege that the law passed by the General Assembly of said State, and approved April 21st, 1922, undertaking to amend provision 5, sec. 5, article 5, Laws 1919, and amendments thereto, Acts 1921, by providing that said State Highway Board is authorized to construct and maintain State-aid roads in and through towns and cities of not more than 2500 people, as set out in Acts 1922, page 177, is unconstitutional and null and void, in that it violates the provision of the constitution of the State of Georgia as embodied in section 4, article 1, paragraph 1, of the constitution, and section 6391 of Park's Code." An amendment to the petition alleged that the Highway Department had abused the discretion resting in it by law, in designating the Siloam and White Plains route; and that said designation of that route was illegal, in that no recognition of the unnecessarily expensive difficulties in laying out said road were considered or recognized, and that said designation was arbitrary, and of such unnecessarily enormous cost to petitioners and taxpayers of the State as to be oppressive and burdensome. The facts upon which the plaintiffs relied to show that the Highway Board was abusing the discretion vested in it by law appear from the opinion in that case. In the brief of counsel for plaintiffs in error, filed in this court in that case, it was said: "Unless the petition shows defendants in error abused their discretion, as alleged in paragraph 21 of plaintiff's petition and in the amendment to petition, or are proceeding contrary to law in regard to said route as alleged in paragraphs 21 and 22 and said amendment to petition, the petition would not withstand general demurrer. But if either of said propositions are shown by the allegations of the petition,

plaintiffs in error contend the demurrer should not be sustained nor petition dismissed." It will thus be seen that the plaintiffs in the case cited did not question the authority of the State Highway Department to locate Route 15; but simply contended that there was an abuse of discretion in locating that route instead of designating the old road between these towns as a State-aid road. As appears from the above extract from their brief, plaintiffs' counsel did not question the authority of the Highway Department to locate Route 15, but only contended that there was an abuse of their power in so doing. So the question decided in the present case was in no way made, involved, or decided in the case cited.

It is next insisted that this court overlooked the fact that the map which it was contended showed that the road via McBean had been designated as the interconnecting county-seat road between Augusta and Waynesboro was prepared in September, 1921, before the act of 1921 went into effect on January 1, 1922, and consequently there could be no official designation of a road prior to the act giving the State Highway Board authority to do so; and that there is nothing in the record to authorize the conclusion that the State Highway Department had designated the McBean Route officially. The mere fact that the designation of this road is on a map made prior to the time the act of 1921 went into effect does not make illegal a designation of this highway on said map, after said act became effective. Furthermore, the act of 1921 provides "that the said Highway Department shall take over the State-aid roads as above mentioned on or before January 1, 1922." This necessarily implies that the State Highway Department could proceed in designating these roads under the act of 1919. Furthermore, it appears from the record that the McBean Route had been taken over by the State Highway Department under the act of 1919, and had been maintained for a number of years prior to the attempt of the State Highway Board to relocate it as a State-aid road. If it had not been designated as a State-aid road, the State Highway Board would have been without authority to relocate it. Relocation of a State-aid road necessarily implies that it had been designated and taken over by the State Highway Board in accordance with law. So a majority of the court are of the opinion that the motion for rehearing is without merit.

*Rehearing denied.*