RAINES *et al.* v. TERRELL COUNTY *et al.*

No. 7287. JANUARY 15, 1930.

*W. H. Gurr* and *M. C. Edwards,* for plaintiffs.

*J. D. Kilpatrick* and *H. A. Wilkinson,* for defendants.

RUSSELL, C. J.   In *Jackson* v. *State Highway Department,* 164 *Ga.* 434 (138 S. E. 847), this court held that "A court of equity will not interfere with the discretionary action of this board in designating and locating a State-aid road, within the sphere of their legally delegated powers, unless such action is arbitrary and amounts to an abuse of discretion," citing *Dyer* v. *Martin,* 132 *Ga.* 445 (64 S. E. 475); *Dunn* v. *Beck,* 144 *Ga.* 148 (86 S. E. 385); *Holl* v. *Smith,* 149 *Ga.* 48 (99 S. E. 119).   In exposition of this ruling Mr. Justice Hines stated the following facts: "The choice was between two routes between Greensboro and Sparta, which we denominate A and B.' A is a much traveled route in excellent repair, is the original county-site road leading from the former to the latter city, and is now being used, maintained, top-soiled, and worked by the State Highway Department.   It runs through the town of Veazey in Greene County, and by the Harris grist and flour mill to Hancock County.   It runs from Greensboro to the Hancock County line, a distance of about 15 miles.   It traverses in the main a level country, with scarcely any crossing of streams requiring expensive bridges, or large fills.   It is a ridge road upon firm and dependable soil, and has been in use for nearly a century.   It is a direct, straight course between said county-sites, and is shorter than route B.   Great expense will be incurred by petitioners and other taxpayers in condemning rights of way for route B.   The rights of way for route A have been acquired, and there will be no cost for that purpose on that route.   Route 16, the State-aid road from Eatonton to Sparta, runs into route A, eight or nine miles from Sparta, and will make route A eight or nine miles shorter and less expensive in both cost and maintenance.   The county-site road from Milledgeville to Sparta runs into route A, some distance from Sparta, and this will make a saving of expense to petitioners and other taxpayers in the expenditure of the road funds of the county and State.   In order for the road from Milledgeville or Eatonton to reach route B, they will have to cross route A, these routes being three miles apart.   At one time the Highway Department decided to use route A.   Route B will go through the incorporated towns of Siloam and White Plains, in Greene County. It runs almost due east from Greensboro to Siloam, thence due

south six miles to White Plains, thence two miles to the Hancock County line, and thence about fifteen miles to Sparta. It is to constitute a link in Route 15, which is being constructed as a Federal-aid route, running from the northern to the southern boundary of the State, under Federal law, which requires the shortest available acceptable route, in order to participate in Federal funds. This route will require several miles of entirely new road, through forest and dense thickets, over rough and abandoned country and high hills, and will require the erection of expensive bridges and culverts, including the extra cost of several hundred thousand dollars over the cost of route A. To grade the new portion of this route will involve an expenditure exceeding $200,000. The Highway Department and the county authorities at one time decided to use route A, but the former has now decided to adopt route B. The above facts, setting forth the advantages and disadvantages of each of these routes, are stated in the plaintiffs' petition, and the demurrer to the petition admits them to be true. In these circumstances did the State Highway Board abuse its discretion in selecting route B, instead of route A? The facts in favor of the advantages of route A are weighty and persuasive, and might well justify the selection of this route; but when we consider the chief purposes to be accomplished in designating and locating the State-aid roads, we can not say that the officials abused their discretion in selecting route B, especially when their discretion has been approved by the able trial judge who passed on this case in the court below."

In the case at bar the judge was authorized to find that the distance between Dawson and Albany by the Florida Short Route is about 26 miles, of which about 14 miles are in Terrell County; that the route was originally a Federal-aid project, but for some time past has been maintained by the State Highway Department; that Terrell County by a vote of the people authorized the issue of $300,000 in bonds; that the resolution authorizing and calling the election, dated January 5, 1926, provided that the bonds should "be issued for the building of permanent roads," and that "the proceeds arising from the proceeds of the bonds shall be used exclusively in the building of permanent roads in the County of Terrell." No resolution has been adopted abandoning any part of the Florida Short Route as a public road; on the contrary, a resolution was passed that the Florida Short Route be connected with

the new road recently completed by Dougherty County if the State would reimburse Terrell County for said work. While no part of the Florida Short Route has been relocated or abandoned, the State and Federal engineers have made a change in a part of the route south of Sasser, the road to run south direct to Albany, a distance of 21 miles, with 2-1/2 miles in Terrell, 7-1/2 miles in Lee and 12 miles in Dougherty, the latter being already paved. By adopting this plan rectangular turns have been eliminated, and the distance between Dawson and Albany by the change has been shortened 4-1/2 miles, and the saving of that much mileage in Terrell County amounts to a saving of $100,000. So, while it is a relocation of the State-aid road, it does not involve the abandonment of any part of the road by Terrell County or the value of any aid or service, nor devolve any injury upon the petitioners.

But it is strenuously insisted that the county commissioners have not kept faith with the people of Terrell County as to the bond issue, and that representations were made and the public induced to vote the bond issue of $300,000 under the idea that the Florida Short Route would not be changed; but, as pointed out by the trial judge in his full and clear exposition of the facts, the first call for the election upon the issuance of the bonds was withdrawn and a new advertisement was published, in which every one was specifically told that there were "no strings whatever tied to the bonds, and no limitation as to how the money may be used." The advertisement stated "that the proceeds arising from the sale shall be used exclusively in the building of permanent roads in said County of Terrell." No road was designated or located; and we are of the opinion, as expressed by the trial judge, that "the commissioners are at liberty to build permanent roads at any time and any place in any part of the county, with or independent of State or Federal aid," provided there is no abuse of discretion, as pointed out in the *Jackson* case, supra.

Counsel for the plaintiffs rely upon *Marks* v. *State Highway Department,* 167 *Ga.* 792 (146 S. E. 838), as well as *State Highway Department* v. *Marks,* 167 *Ga.* 397, 400 (145 S. E. 866). In neither of these cases was the opinion of the court unanimous, for in each Beck, P. J., and Atkinson, J., dissented, and, as was pointed out in 167 *Ga.* 792, while the decision of the majority, in which the judgment of the trial court in refusing an injunction re-

straining the State Highway Department as prayed, was reversed, the judgment of reversal was based, not upon the theory that the Highway Department did not have the power and right to relocate a road, but upon the ground that the so-called relocation as to the route between Augusta and Waynesboro amounted to establishing an entirely new route and the abandonment entirely of an existing road. It was said: "To relocate is the same thing as to locate anew. The power to relocate the road-bed of an existing road does not include the power of establishing a new road, and of abandoning entirely the existing road. The power to resurvey and relocate the road-bed and right of way of an old road does not confer the power to lay out an entirely new road. The authority to relocate anew includes the authority to make some departure from the old or existing' road. Cambridge *v.* Middlesex County, 167 Mass. 137 (44 N. E. 1089). The word 'relocate,' without addition or qualification, means to locate again, and implies a preservation of the identity of the way without material change. Relocating is not intended to be used as a method of making important changes in a way. 29 C. J. 517, § 225, 2, note 96. The above power granted to the State Highway Department to resurvey and relocate the road-bed and right of way of a road taken over by it does not give to that body the authority to wholly abandon the road taken over and to build an entirely new road. The power of relocation of a road does not confer the power of its abolition. The evidence demands a finding that the State Highway Department proposed to build a new interconnecting county-site road 25 or 30 miles in length, and to abandon the existing interconnecting county-site road which they had previously designated as such and had taken over its construction and maintenance for a number of years."

It is, we think, readily to be seen that the *Marks* case is not in point on the question presented in this case, because, while there is a shortening of the distance of 4-1/2 miles, there is no abandonment of the old Florida Short Route as a public road. It simply becomes one of the public roads of the county system, and upon the county will devolve the duty and expense of maintaining it in the future. But aside from this, it must be borne in mind that it appears from the record that the National government absolutely declines and refuses to assist in the construction of the road which the petitioners desire to have built, and this may have been the

reason why the county commissioners of Terrell County, desirous of fulfilling the desires of the voters of the county who declared for a bond issue of $300,000 to construct permanent roads in Terrell County, were compelled to accede to the will of the representatives of the National government, who are to materially contribute to-wards the pavement of any route which may be paved.

We think that this case is controlled by the ruling in *Murph* v. *Macon County,* 167 *Ga.* 859 (supra), in which all the Justices con-curred. In that case it was held that the provisions of the act of August 10, 1921 (Ga. L. 1921, pp. 199, 200), properly construed, "authorize the State Highway Department to resurvey and relocate a road which has been officially designated and maintained as a State-aid road on September 23, 1921, provided there is no material change in the general direction and location of the designated road other than such as is dictated by the public interest in establishing a route for use as· a ·State· highway system, taking into consideration distance, cost of construction, topographic and construction difficul-ties, expense of maintenance, the safety of travelers, and 'all other circumstances affecting the construction and maintenance, and the securing thereby of a main trunk-line route through the State.'" And so we hold in this case, that, in view of the fact that the State High-way Department is clothed with a large discretion in the location of State-aid routes, it can not be said that the change in routes as pro-posed by the resurvey and relocation of a few miles of a highway which extends for many miles is a material change when the cir-cumstances attending such change are (1) a shortening of the dis-tance of the road of more than four miles, the cost of building which amounts to $100,000; (2) the inability to procure any Federal funds to aid in the pavement and completion of the project in which the National government is participating; and especially (3) when the Highway Department in relocating the road or right of way has conferred with the county authorities and is giving due consideration to their wishes. As held in the *Jackson* case, supra, the discretionary action of the Highway Board in locating a State-aid road will not be interfered with by the court unless their action is beyond the scope of their legally delegated powers or is arbitrary and amounts to an abuse of discretion. The case before us is indeed stronger than the *Murph* case, supra, in that the bonds in that case were voted to be applied alone to the work of paving the

public road known as the Dixie Highway. As already pointed out, the voters gave the county authorities unlimited freedom of action to apply the proceeds of the bond issue to any permanent road in the county.

The act of 1929 (Ga. L. 1929, pp. 260, 264) does not affect our decision in this case, because, as held in *Jackson* v. *State Highway Department, Murph* v. *Macon County,* supra, and other cases, it has already been decided that a relocation of several miles of a State-aid road is authorized under the power of relocation given the Highway Department. The act of 1929 enlarges that power by giving the Highway Department the right to relocate an entire road between two points, provided the control points are not changed. In this case there is no attempt to change the road between Dawson and Albany except for a portion of the distance intervening between these two cities, amounting to perhaps nine or ten miles, and in this change not only are the control points not affected, but at the time the petition was filed fourteen miles from the Albany end had already been paved, and it is conceded that there is paving to Sasser, which is about ten miles from Dawson, which is the other control point, and the proposed route will leave only two and one half miles to be constructed by the county of which the complainants are citizens. The judge in the court below did not find that there had been any abuse of discretion, nor do we.

*Judgment affirmed. All the Justices concur.*