WARD *et al. v.* STATE HIGHWAY BOARD *et al.*

No. 7655. FEBRUARY 28, 1931.

*W. H. Harris* and *C. L. Shepard,* for plaintiffs.

*C. E. Brunson, Duncan & Nunn, Tye, Thomson & Tye,* and *Seward M. Smith,* for defendants.

BECK, P. J. After the hearing the trial judge rendered the following judgment and opinion, wherein the facts of the case appear:

"This case came on to be heard in regular course, praying for an injunction against certain proposed and pending action by the board of commissioners of Houston County and the State Highway Board with reference to change of location of a certain part of the State Highway route No. 7 between the cities of Fort Valley and Perry, near the latter town. It appears that the petitioners are owners of land lying near and adjacent to that portion of the road now used as the State Highway which would not be a part of the regular State Highway should the alleged threatened action on the part of the defendants be put into effect. They complain as taxpayers of Houston County and also as owners of the said lands which they allege would be greatly damaged should the proposed change be effectuated. E. M. Beckham and the firm of Beckham & Lawler are made the defendants in the case, it appearing that they are alleged to be contractors doing work at the time of the filing of the suit, in grading some part of the proposed new section to be utilized as part of said State Highway, occasioned by the proposed change in the route. The petition is that the county commissioners be enjoined from spending any of the county money or any of the money under their control belonging to the County of Houston on the proposed new construction. A restraining order was issued in pursuance of the petition, to which all the defendants were made parties.

"1. The salient points raised by the petition are as follows: That the people of Houston County voted for the issuance of $200,-000 of bonds for the construction of roads in Houston County, based on the promise and assurance that the proceeds of the bonds would be used exclusively in the construction of permanent roads

of concrete; that in 1927, after the issuance of the bonds, a resolution was passed by the county commissioners, to the effect that concrete would be used in the construction of the proposed roads with the money, proceeds from the issuance of said bonds; that during the year 1929 the State Highway Board, after surveying several routes for the portion of route 7 leading from Fort Valley to Perry, designated practically the old road which ran through and along the properties of petitioners. It is further complained that the county commissioners of said county, 'without any notice to any taxpayer, so far as petitioners are informed, caused the resolution to be spread upon the minutes to the effect that the State Highway Department be requested to relocate the right of way for the road according to the recommendation of the construction engineer of the State Highway Department,' this resolution appearing to have been adopted August 30, 1929.

"2. It is alleged that the new route so adopted would constitute a new State Highway from Perry to Myrtle, of about six miles in length, and that four miles of this distance is through undeveloped, rough country over which it would be very expensive and difficult to maintain a highway; that a new route would encounter a difficulty in making a proper union with the old highway at the county line of Peach and Houston counties. Other objections are urged, . . based upon alleged public inconvenience arising out of the proposed change of the route and the large expense of the constructing of the new route, and to the reconstructing of the old route.

"3. Complaint is made in the petition that E. M. Beckham and Beckham and Lawler are proceeding upon a verbal contract and that this contract was not in writing recorded on the minutes of the board of county commissioners of Houston County and is not a legal contract, and that the board of county commissioners are without authority to make any payment to said Beckham on said contract. It is also contended, that, the present route from Myrtle to Perry having been duly certified into the State Highway system, the State Highway Board is without authority to abandon said route. . . Special complaint is made . . as to the expensive bridge across Bay Creek that would be necessary if the new route is adopted, making two bridges to be kept up by the county by reason of the building of a new bridge over the proposed route.

"4. The point is raised, . . that 'The State Highway Board has already, prior to January 1, 1929, expended for construction work in Houston County $243,157.86 more money than it is or was authorized to expend for such purpose in said county under the provisions of section 2 of the act of the General Assembly approved August 10, 1921, amending the act of 1919 reorganizing the State Highway Department, in which section of said amending act it is provided that construction funds shall be expended by the Highway Board in such counties according to highway mileage therein.'

"5. Considering paragraph 24 of the petition, an important question of construction arises as to alleged limitations upon the power of the Highway Board in the use of the State Highway funds which come into its hands to be administered; it would seem to be immaterial in this case to the relief sought by the petitioners, the owners of property that may be damaged by the 'abandonment' of certain portions of the route as a State-aid highway, that the State Highway Board has expended more money in the County of Houston than Houston County has been entitled to receive. But, without reference to this consideration, I do not think that a careful consideration of the law invoked by the plaintiffs in this 24th paragraph places such a limit to the authority of the State Highway Board as would make the proposed expenditure of funds contrary to the law cited. The act of 1919, providing that the road fund shall be annually divided between the congressional districts according to designated mileage, is still a part of the law; and this act further provides, with reference to congressional districts, that the construction work shall be begun and carried on simultaneously in each and every one of said districts with the funds annually apportioned thereto. The act of 1921, amendatory of the above-mentioned act, provides that the general fund shall be *apportioned* to the counties on the basis of road mileage. Nothing is said in this amending act as to annual division or as to construction being carried on simultaneously. If these two provisions as to the handling of the general fund can be so construed as to give effect to both, and at the same time promote a *system* of State Highways, this construction is called for and demanded. Manifestly, the general purpose of the law with reference to this matter is that connecting roads between the counties and in all parts of

the State shall be constructed as expeditiously as possible for the use and benefit of the people of the State. Now the provision as to congressional districts *requires* that the funds be actually divided and work of construction carried on in each district at the same time. The act of 1921 says nothing as to the expenditure of moneys in counties, but merely refers to the *apportionment* on the basis of road mileage. These two sections are evidently not repugnant. The plan evidently is that some work should be going on in all the congressional districts with the money apportioned to them. This would seem to be feasible and fair, to the effect that the different sections of the State would be represented in the *apportionment* and the *expenditure* of the funds. With reference to the amending act of 1921, it would appear that the legislature did not deem it to be feasible, or even possible, that a connecting system of permanent roads could be constructed in 150 or more counties at the same time. It was necessary to give a large degree of discretion to the State Board with a gigantic task to be worked out under great difficulties. This amendment seems to give to the board not only the duty to work out this problem, but gives them very considerable latitude to build a connecting system of roads throughout the State, leading from county seat to county seat. While the provision with reference to dividing the funds among the congressional districts annually is mandatory, and the requirement that the work shall go in the congressional districts at the same time is likewise mandatory, this provision with reference to the counties is mandatory only as to apportionment. This provision as to the counties is evidently made as supplementary to the provision with reference to congressional districts, with the *careful omission* from this provision of any such requirement as made as to the congressional districts. I think, therefore, that the construction of the law upon which section 24 of the petition is based is erroneous and this paragraph is demurrable.

"6. With reference to the right and power of the State Highway Department to relocate a portion of a State highway after it takes over the same as part of the State-aid highway system, and especially as to that part of such a road leading from Fort Valley to Perry concerned in this case, the provision of the law is as follows (Michie's Code, § 828(19), provision 3): 'That the said State Highway Department shall take over the State-aid road as

above mentioned on or before January 1, 1922; and provided further that when the various counties have complied with the law with reference to right of way, and provided further that the said Highway Department in taking over said roads is not bound to the right of way of the road-beds as located on January 1, 1922, but shall have the right to resurvey and relocate said road-bed and right of way, and it shall be the duty of the county or counties in which resurveys and relocations are made to furnish the right of way or the relocation and resurvey free of charge to the said Highway Department.' The provision last named was amended by the act of 1929 so as to read as follows: 'and provided further, that the State Highway Department, in taking over said roads, is not bound to the right of way and road-bed as located on January 1, 1922, but shall have the right to resurvey and relocate, *in their entirety, any one or all of said roads, keeping in view only the control points.*' The use of the words in the act of 1929, 'control points,' must necessarily refer to the two county. seats, Fort Valley and Perry, inasmuch as the State Highway plan is to connect the county seats of the State. When the language in both quotations above from the present law is considered, it seems that there can be no question as to the power of the State Highway Department to make the proposed change in this case in the exercise of its very wide discretion. I do not think that the courts have any power to control the discretion vested in the State Highway Board, unless it is shown that this discretion is grossly abused. I do not think, in the contemplation of the evidence in this case, that it can be said that there has been a gross abuse of discretion. It is a matter of peculiar jurisdiction of the board; and unless the proposed action is so arbitrary, capricious, and unreasonable as to be without any foundation of reason, no court should undertake to substitute its judgment for that of the board to which the matter is committed by law. What has been said above as to the discretion and power of the State Highway Board applies fully to all questions of selecting and constructing all routes, materials, and all matters of expense incident to the construction of State highways. The same thing is also true as to the exercise by county commissioners of functions committed to them by law. They cannot be controlled by court action except in so far as the action is shown to be capricious, unreasonable, oppressive, or without any

·foundation in reason, the court having no power as to them to substitute its wisdom or its judgment as to matters committed by law peculiarly to them.

"7. I think this reason applies to all the material contentions of the plaintiffs in this case, except one, that is, as to the validity of the verbal contract made by the county commissioners of Houston County with Beckham, or Beckham & Lawler. As to paragraph 18 of the petition referring to such verbal contract, it may be noted in the light of the sworn answer: 1. That the plaintiffs are not a party to this alleged contract. 2. That the contract is not such a contract as contemplated by section 386 of the Code of 1910, in this, that said arrangement between the county board of commissioners and Beckham was not that Beckham was to perform any particular job for a stated compensation, but was only to do such work taken by the county board with the State Highway Board to be done with reference to certain grading and preparation for the road-bed for the laying of pavement, that Beckham was to be paid for the work that he was to do at the rate specified in the contract between the State board and the county board—in other words, piecework; and that in effect it was being paid for by the county board for the State board, to be repaid to the county board in adjusting the accounts between the two boards; that if it could be called a subletting at all, it was a subletting in which there was no profit to the county board, and the county could in no way be ultimately liable for the cost of such work; that the said section of the Code was not intended to prevent the county authorities from hiring laborers to perform work on the county roads; that the purpose and effect of said Code section was to furnish a defense for the county against the claim of any contractor with the county who might enter into a contract with the county without the compliance with the condition imposed by the Code section 386 as stated. Also, it would appear that the proposed work to be done by Beckham for the county was not for the advantage of the county, or that the compensation therefor was excessive or unreasonable; this being a matter about which no man, as a mere citizen, could have the right to interpose any legal objection. Moreover, the law expressly authorizes the county commissioners to 'have work done on the public roads of the county by chain-gang, by contract, or by the lowest bidder or otherwise, as may be to the best interest of the county.' The use

of the word 'otherwise' seems to remove the restriction as to contracts of this nature applicable as to ordinary county contracts. Michie's Code, §§ 654-655. I therefore reach the conclusion that the employment of Beckham or Beckham & Lawler was not illegal for the reasons alleged. . .

"From the above considerations, I conclude that the plaintiffs are not entitled to the injunction for which they pray; and that therefore the restraining order heretofore granted is dissolved and the injunction prayed for denied."

After a careful consideration and examination of the foregoing opinion, this court has reached the conclusion that the judgment announced was correct and in accordance with the law bearing upon the issues involved, except as to the ruling in division 7, where the court held that the oral contract made by the county commissioners of Houston County with Beckham, or Beckham & Lawler, was valid and binding and did not fall within section 386 of the Civil Code, which provides that "All contracts entered into by the ordinary with other persons in behalf of the county must be in writing and entered on their minutes." We are of the opinion that the contract fell within that section, it being in parol and not entered on the minutes, and consequently not complying with the mandatory requirement of the section; and to that extent the judgment must be reversed.

*Judgment affirmed in part and reversed in part. All the Justices concur except*

BECK, P. J., who dissents from so much of the decision as holds that the contract of the county authorities with Beckham & Lawler was not valid and binding, being of the opinion that the judgment was correct in so far as it construed this contract and held it valid.