STATE HIGHWAY DEPARTMENT *v.* RICHMOND COUNTY.

No. 10133. OCTOBER 10, 1934. REHEARING DENIED NOVEMBER 17, 1934.

*B. S. Miller* and *S. M. Mathews,* for plaintiff in error.

*Pierce Brothers,* contra.

GILBERT, J. There are two roads which lead from Augusta, Georgia, to Waynesboro. One is known as the "Peach Orchard Route" and the other is called the "McBean Route." The roads diverge a short distance southerly from the city limits of Augusta, and connect at Waynesboro. From the point of divergence and extending southwardly a distance of 9.609 miles the road known as the "McBean Route" was paved in 1930 at an expense of $216,-276.20, which was paid by Richmond County. Richmond County thereafter brought this suit against the State Highway Department, seeking reimbursement for the amount so paid, and praying for a decree that the 9.609 miles in question of the "McBean Route" was a part of the State-aid roads of the State highway system of Georgia, and that the State Highway Department issue to Richmond County certificates of indebtedness to cover the $216,276.20. The case turns on the questions, were the 9.609 miles a part of the State-aid system in 1930; and if so, is Richmond County entitled to highway certificates for the amount expended; this under the constitutional amendment submitted by the act of 1931 and the enabling act passed in pursuance thereof in 1933.

The constitutional amendment here involved (Ga. L. 1931, pp. 97, 99) provides, "that all indebtedness of the several counties . . heretofore incurred for the construction and/or paving of the public roads or highways, . . as contemplated and defined by article 6, section 1, of the act approved August 18, 1919, as said section appears on page 252 of the Georgia laws of 1919, which were a part of the State-aid roads of the Highway System of Georgia, and said work was done under the supervision of the Highway Department, is hereby assumed by the State of Georgia as an indebtedness of the State." Article 6 of the act approved August 18, 1919 (Ga. L. 1919, pp. 242, 252), provides that each county which has "heretofore built or which shall hereafter build any portion of the roads within such counties designated by said board as a portion of said system of State-aid roads, with funds secured from the issuance of county bonds or otherwise, under approved plans, specifications, and supervision of the State Highway Department, shall be reimbursed in whole for the cost of said roads; provided, that before any portion of said State-aid road system shall be constructed by any

county, project therefor shall be approved in advance by said State Highway Board by formal action entered upon the minutes, specifically setting forth the agreements; and provided further, that thereafter said roads as so constructed shall constitute a part of the system of State-aid roads and be maintained by said Highway Board as herein provided for; and also provided, that no county so constructing any portion of said system of State-aid roads shall be repaid any portion of the cost thereof until after the entire system of interconnecting county-seat to county-seat highways shall be completed." The constitutional amendment proposed in 1931 was ratified by the people in 1932; and on March 1, 1933, was approved the enabling act passed pursuant thereto. Ga. L. 1933, pp. 161-172. This act declared the various amounts due the respective counties, the amount specified for Richmond County being $1,019,304.41, and the sums in this part of the act enumerated being declared to be due for assessments made against said counties for the construction and/or paving of the public roads and highways which were a part of the State-aid roads of the highway system of Georgia, the contracts having been done under the supervision of the department prior to September 1, 1931. Then follow provisions as to how the payments are to be made, and for the issuance by the Highway Department of certificates of indebtedness, etc.

In the agreed statement of facts on which the case was submitted to the judge without a jury it appears that the reimbursement certificates for work on the McBean road now being sued for are not included in the $1,019.304.41 specified above for Richmond County by the act of 1933. The court found in favor of the county, and the case is here on exceptions to its decree.

From a consideration of the above it is apparent that the controlling question in the case is whether the paving done by Richmond County in 1930 was done on a road which at that time was a part of the State-aid system, for it is only for work done on such roads that reimbursement can be had. The locations of the two roads including the 9.609 miles here involved have been platted as follows:

It is undisputed that for many years prior to October 24, 1929, the "McBean Route" was a part of the State-aid System. Richmond County claims it still is. The State Highway Department on the other hand contends that under authority of the Traylor-Neill act (Ga. L. 1929, p. 260) the county-seat to county-seat road between Augusta and Waynesboro was, before the paving in question was done, relocated via the "Peach Orchard Route," and that thereupon the "McBean Route" ceased to be a State-aid road and became only a county road, the cost of pavement of which can not be reimbursed by the State Highway Department. The action by virtue of which that department avers this change was made was in the form of a resolution of that body, dated October 24, 1929, providing that thereafter the Peach Orchard Route from Augusta to Waynesboro should be the State-aid county-seat road in lieu of the road via McBean. Richmond County replies to this position by averring that although the Traylor-Neill act gave the State Highway Board authority to relocate certain State-aid roads, yet the McBean Route was by the terms of that very act expressly kept in the State-aid system; and therefore that the resolution of October 24, 1929, could not have the effect of altering the legal status of the McBean road as it was fixed by the act. Questions presented by the legal status of this McBean road have been before this court on other occasions. *Marks* v. *Richmond County,* 165 *Ga.* 316 (140 S. E. 880) ; *State Highway Department* v. *Marks,* 167 *Ga.* 397 (145 S. E. 866) ; *Marks* v. *State Highway Department,* 167 *Ga.* 792, 797 (146 S. E. 838). See also *Murph* v. *Macon County,* 167 *Ga.* 859 (146 S. E. 845). In the decision reported in 167 *Ga.* 797, supra, rendered on January 19, 1929, it was held that the right as it then existed in the department to "relocate" a road did not confer the power to completely abandon an old road and build an entirely new road, as was contemplated by the proposed substitution of the Peach Orchard Route for the McBean Route. This decision taken with that reported in 167 *Ga.* 397 (both being parts of the same case) fixed the status of the McBean Route as a State-aid road on January 19, 1929. Then came, in the fall of 1929, the passage of the Traylor-Neill act, in which the right to abandon old roads was in effect given in connection with the power to substitute new roads, keeping in view only the control points. The grant of these powers was held valid by this court in *Ward* v. *State Highway Board,* 172 *Ga.*

414 (157 S. E. 328). The major question now presented may therefore be answered by deciding what, if any, effect the State Highway Board resolution of October, 1929, had, in view of the provisions of the Traylor-Neill act, in classifying this McBean Route as a part of the State-aid system.

The Traylor-Neill act declared "that from and after the passage of this act the State-aid roads in the State of Georgia are such roads as are indicated by the parallel white lines on the map of the State of Georgia hereto attached and made a part of this bill." And it is conceded by all the parties in the case at bar that the parallel white lines which appear on the plat as connecting Waynesboro with Augusta represent the McBean Route. This being true, counsel for Richmond County contend that it was the intention of the legislature to retain this road permanently as a State-aid road, and that the control of roads is vested primarily in the General Assembly. It seems clear to us that the provision which appears in section 1 of the Traylor-Neill act, that "the State Highway Department in taking over said roads is not bound to the right of way and road-bed as located on January 1, 1922, but shall have the right to resurvey and relocate in their entirety any one or all of said roads, keeping in view only the control points," was enacted to avoid the effect of the decision in *Marks* v. *State Highway Department*, 167 *Ga.* 792 (supra), which was that the word "relocate," as it appeared in the law as it then stood (January, 1929), implied a preservation of the identity of the way without material change, and did not extend a right to abandon an intercommunicating county-site road 25 or 30 miles long, and build an entirely new one between the termini. The words, "in their entirety any one or all of said roads, keeping in view the control points," are new matter and appear for the first time in the Traylor-Neill act.

From the above it becomes necessary to construe the Traylor-Neill act; and in considering section 1 we are confronted on the one hand with the provision that the department may relocate in their entirety, keeping in view only the control points, "any one or all of said roads" (the words "said roads" by the context apparently referring to the roads taken over on or before January 1, 1922), and on the other hand with the statement further on in the same section that the roads on the map attached shall be the State-aid roads of Georgia. If we consider that by the language last referred

to the legislature intended to declare that all the roads on the map should continue to be State-aid roads until changed by legislative action, then the expressions as to relocation are without full effect. Does the right to relocate expressly given to the department apply to any State-aid road, or only to those taken into the system on or before January 1, 1922? If the latter, why the discrimination? A question of relocation, the abandonment of an old route between control points and the substitution of a new one, involves only one thing: the efficiency of the system as a whole, the greatest benefit to the largest community. How can such a purpose be affected by the mere manner in which the road originally was taken into the system? Undoubtedly there are many roads indicated on the map attached to the act which were taken over on or before January 1, 1922. If the contention of counsel, as we understand it, that all roads on the plat were State-aid roads and were to continue as such until changed by legislative act, be correct, then the provisions as to relocation by the department may as well be stricken. Construing the provision quoted above from section 1 with the declaration which occurs in the same section that the roads indicated on the plat by white parallel lines "shall be State-aid roads" leads us to believe that while the legislature undoubtedly intended to declare these roads State-aid roads as of the date of the approval of the act (August 20, 1929), it had no idea that they would necessarily remain exactly as they appeared on the plat until changed by another act of its own body. While some portions of the Traylor-Neill act are perhaps not worded so clearly as one might wish, under the usual rule that a statute is to be construed according to the underlying intent of the legislature as expressed by the act as a whole, we are of the opinion that the power of relocation of a State-aid road in its entirety, keeping in view only the control points, extended to all the roads appearing on the map. This appears to be conceded by counsel for defendants in error. In their brief they state: "By that act the State Highway Board was given the power to relocate a county-seat to county-seat road, or any other State-aid road."

The legislature had the power to do many things, which for purposes of expediency it delegated by the Traylor-Neill act, as well as by other prior acts, to the Highway Board. When it inserted in the act the right of relocation of State-aid roads in their entirety,

limited only by control points, it must have done so because it foresaw that changes here and there between control points might become desirable and work out to the betterment of the State-aid system as a whole and the greater convenience of the various communities. And it seems quite clear that the thought in the legislative mind was that as to such details the board could decide more efficiently and more expeditiously than could the General Assembly itself. In the light of the above, we hold that the State Highway Board, under the Traylor-Neill act, has, in the exercise of its discretion, the right of relocation of any State-aid road which appears on the map attached to the act, if in such relocation it complies with the provisions of the act and keeps in view the control points. Immediately following the quotation from counsel's brief given above, it is stated: "Yet by the same authority the 9.609 miles of road in question was expressly kept in the State-aid system. The identical road was designated on the map attached to that bill, as will be seen by reference thereto;" and, as stated above, it was admitted in the agreed statement of facts that the McBean road appeared on the map attached to the Traylor-Neill act. But while it is undeniably true that the McBean road was a State-aid road long prior to the passage of the Traylor-Neill act (probably from 1922), and was placed on the map as a State-aid road, it by no means follows that the resolution of the State Highway Department of October 24, 1929, rerouting the State-aid road between Augusta and Waynesboro via the Peach Orchard Route, did not have the effect of eliminating the McBean road as a State-aid road. In our opinion that is the effect of the resolution. That the power of relocation conferred by the Traylor-Neill act extends to the power to abandon a State-aid road as shown on the map, and to build an entirely new State-aid road between the control points, was decided by this court in *Ward* v. *State Highway Board,* supra. On the point here involved that decision was by a full bench. In that case rights of individual property owners were presented. Undoubtedly the relocation of the highway between Fort Valley and Perry promised great damage to them, but that could not be helped. The effect of the ruling was that if the relocation inured to the benefit of the road system as a whole, it must be done, and that of this the State Highway Board was to be the judge in its exercise of a wise discretion, which would not be controlled by the courts unless mani-

festly abused. It follows that when, after the passage of the Traylor-Neill act, the board passed the resolution of October 24, 1929, reciting that on September 4, 1929, it had ordered a resurvey of the route between Augusta and Waynesboro, which survey had been completed, and that it was the sense of the board that the Peach Orchard Route should be the State-aid road between the points named, and it was resolved that "the Peach Orchard Route is from and after this date the State-aid county-seat road from Augusta . . to Waynesboro, . . same being in lieu of the road via McBean," the Peach Orchard Route became a State-aid road and the McBean Route ceased to be one, and was thereafter only one of the public roads of the county system; and upon the county, after the passage of the resolution of October 24, 1929, devolved the duty and expense of maintaining it. *Raines* v. *Terrell County*, 169 *Ga.* 725, 729 (151 S. E. 509). As it was after October, 1929, that the paving was done by Richmond County on the 9.609 miles of the McBean Route, reimbursement for which is here sought, the county's action must fail. No question of abuse of discretion is presented by the case.

In determining the true meaning of the Traylor-Neill act, another consideration is to be noted. Under the act of 1925 (Ga. L. 1925, p. 207) it was provided that the total mileage designated as State-aid roads should not exceed 6300. The question had arisen as to whether in computing the maximum of 6300 the mileage in certain towns and cities was or was not to be considered. *State Highway Department* v. *Marks*, 167 *Ga.* 397 (supra). It was there held that the act of August 21, 1922, authorizing the board to construct State-aid roads through certain towns, did not affect the mileage limit; and it was the opinion of the court that the board had already adopted the full limit.

It seems probable that the necessity of clearing up this point (the question of the legal status of so-called State-aid roads which had been designated after the mileage limit had been reached) was in the mind of the legislature when the Traylor-Neill act was passed. The declaration so strongly relied on by counsel for defendants in error is found in the concluding sentence of section 2: "That from and after the passage of this act the State-aid roads . . are such roads as are indicated by the parallel white lines on the map . . hereto attached, . . with the power and au-

thority in the State Highway Board . . to designate an ·additional 500 miles of State-aid roads, . . and such roads as are indicated by two parallel white lines . . shall be the State-aid roads, . . without regard to the number of miles in said State-aid roads, until other State-aid mileage is added, . . not to exceed 500 miles." As the sentence just quoted is complete within itself, it seems to us that the declaration was intended to legalize as State-aid roads all those shown on the plat, even though they totaled in excess of 6300 miles, thus removing any further possibility of controversy as to those roads which might have been designated as State-aid roads after the prior legal limit of 6300 had been reached. It follows that the sentence last quoted does not abridge the right, given in the first half of section 1, to relocate roads between control points.

In the decree entered in this case the court stated: "The Neill-Traylor act . . withdrew from the Highway Board the function of designating the State roads, except as to 500 miles of additional highways. . . It categorically included in the State-aid system all the roads 'indicated by the parallel lines on the map of the State of Georgia,' thereto attached, whether they had been designated as such by the Highway Board or not." And from that premise the court drew the conclusion that the effort of the board, in the resolution of October, 1929, to make the Peach Orchard Route the State-aid road between Augusta and Waynesboro, and to abandon the McBean Route as such; was ineffectual. The court erred in this conclusion. That declaration of the legislature undoubtedly stamped the roads indicated on the map as State-aid roads, but it by no means canceled the right given in the preceding sentence to relocate any of those roads in their entirety, provided the control points were kept in view. This right of relocation, since the passage of the Traylor-Neill act, had been approved by this court in the *Ward* case, 172 *Ga.* 414, before the case at bar was decided by the trial court. Construing section 1 of the Traylor-Neill act as a whole, we are clear that its effect is to declare that from and after the date of the act the roads on the map were to be State-aid roads, whether they had been previously legally designated as such or not, but that the board should nevertheless have the power to reroute any of those roads between control points, if and when in the discretion of the board the efficiency of the system as

a whole would be thereby improved; it following, as a matter of course, that upon such rerouting the old route would cease to be a State-aid road and the new route would take its place in the system.

In our effort to arrive at the true meaning of the Traylor-Neill act we have applied the familiar rule as to considering the old law, the mischief, and the remedy. The decisions in the *Marks* cases, rendered under the law as it stood prior to 1929, resulted in two difficulties; first, a doubt as to the legality of the designation of those State-aid roads which had been designated as such after the former limit of 6300 miles had been reached; and second, the limitation on the right of the department to relocate a road when such relocation amounted to a virtual abandonment of a former road-bed and the establishment of a new route. In our opinion it was among the primary purposes of the act of 1929 to deal with these two points, to clear all possible doubt as to the legality of former designations of State-aid roads, and to enlarge the powers of the department as to relocation of roads beyond the limitation of the old law, as stated by this court in the *Marks* case. The conclusion here reached is not affected by the fact that the paving contract on the McBean Route was let on advertisement issued by the State Highway Department which undertook to supervise the work. The commissioners of roads and revenues of Richmond County, by appropriate resolution passed on June 20, 1930, expressed the view that the paving contemplated could be more advantageously let by the State Highway Board, and appointed a committee to go before that board with a view to having a contract let simultaneously with the contract for the paving of the Peach Orchard Route; and in the resulting resolution of the State Highway Board, passed on June 25, 1930, it was recited that the road was not on the State system, "but the county has pledged itself to pave the same," and "the county believes that a better bid can be secured if this project is advertised for and bids opened in Atlanta by the Highway Department acting for Richmond County. The county, of course, to pay 100% of all contract costs on this road." When the contract was actually let, it was between Richmond County and the contractor, and the full amount, $216,276.30, was paid by Richmond County.

Referring to other points made by defendant in error: On December 4, 1929, the State Highway Board passed a resolution appropriating certain funds to the repair of damage done to the

McBean road by a disastrous flood. The recitals in this resolution make it clear that the legal status of the McBean road as a non-State-aid road was not affected by this action. The deeds to the rights of way on the 9.609 miles were secured by Richmond County in the name of the State Highway Board, which deeds were made up on regular highway forms; but this fact can not alter the legal effect of the State Highway Board resolution of October, 1929. Moreover, on March 10, 1931, the division engineer wrote to the attorney for Richmond County a letter relative to these deeds, in which the "McBean project" was referred to as being "now a strictly county project." Also, on March 16, 1931, the engineer wrote to the county attorney: "These deeds should all be cleared in the name of the county, since it is a county project. Our regular right of way forms can be used for this purpose, substituting Richmond County for the State Highway Board." In the agreed statement of facts the State Highway Department specifically contended that it had nothing to do with the form of the deeds as executed by the various property owners, but was preparing the deeds solely in the interest of Richmond County, and used the regular form of highway deed with the realization that the grantee could be changed to Richmond County. It was admitted that none of the deeds was recorded or delivered to the department prior to March 25, 1931, and that the department did not secure the execution of any of the deeds.

Our attention is directed to the final decree in the *Marks* case, which appears in the agreed statement of facts; but this decree in no wise affects the conclusion we have reached. We should perhaps add that no point is made in the record that the proceedings under which the State Highway Board undertook to change the State-aid road between Waynesboro and Augusta were for any reason technically insufficient.

*Judgment reversed. All the Justices concur.*